Rayminh L. Ngo, Esq.
EDNY #RN4834
HIGBEE & ASSOCIATES (*Of Counsel*)
1504 Brookhollow Dr., Ste. 112
Santa Ana, CA 92705
714-617-8336 (Ph)
714-597-6559 (Fax)
rngo@higbeeassociates.com
*Attorney for Defendants Mathew K. Higbee & Higbee & Associates*

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MEYER, SUOZZI, ENGLISH & KLEIN, P.C.,** | Case No. 2:18-cv-03353-ADS-ARL |
| Plaintiff, | **DEFENDANTS MATHEW K. HIGBEE, ESQ., AND HIGBEE & ASSOCIATES MEMORANDUM IN SUPPORT OF MOTION TO DISMISS [F.R.C.P. 12(b)(6)]** |
| v. | |
| **MATHEW K. HIGBEE, Esq., NICK YOUNGSON, RM MEDIA, LTD., & HIGBEE & ASSOCIATES,** | |
| Defendants. | |

Defendants MATHEW K. HIGBEE and HIGBEE & ASSOCIATES (hereinafter collectively "Higbee Defendants"), respectfully submit this memorandum in support of their motion to dismiss the Complaint filed in this action.

### INTRODUCTION

Plaintiff MEYER, SOUZZI, ENGLISH & KLEIN, P.C. ("Plaintiff") is a large, well-established law firm based in New York which has been in practice for nearly 60 years (since 1960), with four office locations and dozens of attorneys. In its Complaint, Plaintiff admits that it downloaded a photograph from a website without bothering to read or comply with the site's simple requirements to obtaining a license.  After getting caught, instead of simply admitting its

error and resolving this matter amicably and without litigation, Plaintiff instead elected to pursue this frivolous lawsuit against not only the photographer and his licensing company, but also their legal representatives for simply attempting to vindicate and advocate for their clients' legal rights.

Defendant RM Media Ltd. ("RM Media") is a stock photography licensing company that specializes in commercial product photography and supplies unique images for web designers, bloggers and content writers. RM Media is the assignee and sole rights holder to an original image of a computer tablet bearing the words "burden of proof" (hereinafter the "Copyrighted Work"), which was photographed by RM Media's founder, Defendant Nick Youngson ("Youngson").

Youngson had registered the Copyrighted Work with the United States Copyright Office under registration number VAu 1-248-878, with an effective registration date of June 10, 2016. Youngson subsequently transferred all rights to the Copyrighted Work to RM Media, and RM Media is currently the sole rights holder to the Copyrighted Work.

RM Media's content library consists of over 30,000 unique images, which it licenses to the public. RM Media owns a series of affiliate websites including the website identified in the Complaint as the "Blue Diamond Gallery", which offers RM Media content for licensing. *See* http://www.thebluediamondgallery.com/terms-and-conditions.html.

RM Media offers two licensing options for consumers wishing to use its content. Under the first option, RM Media offers the majority of its content to consumers for a paid licensing fee. Under the second option, RM Media offers a limited portion of its content library (including the Copyrighted Work that gave rise to this action) for license under a Creative Commons Attribution-ShareAlike 3.0 Unported (CC BY 3.0) ("CC License"), which, *inter alia,* requires as

2

a condition, that the consumer "give appropriate credit, provide a link to the license, and indicate if changes were made." *See* Complaint Exhibit 2.

Creative Commons licenses, which are widely used across the Internet, are developed and published by a non-profit organization that provides free, easy-to-use copyright licenses to make a simple and standardized way to give the public permission to share and use creative work online. *See* www.creativecommons.org/about/. RM Media offers a limited portion of its content library, including the Copyrighted Work, to those who meet the requirements of a CC License of providing attribution and required link back to RM Media's affiliate websites. The affiliate websites direct prospective licensees to RM Media's larger library of paid content, which drives sales, and boosts RM Media's paid content higher in search engines such as Google.

As demonstrated in Plaintiff's Complaint, the Blue Diamond Gallery website contains a detailed explanation of the terms of the CC License as well as multiple disclaimers alerting prospective licensors that attribution is a required condition to obtaining a license. *See* Complaint, Exhibit 1. Additionally, prospective licensees who do not wish to comply with the terms of the CC License may instead purchase a paid license through one of RM Media's affiliate websites for $250. *See Ibid.*

In its Complaint, Plaintiff expressly admits that on December 26, 2017 it used the Copyrighted Work in a blog article appearing on its website. Complaint ¶¶ 18-19. Plaintiff also admits that it took the Copyrighted Work from the Blue Diamond Gallery website. Complaint ¶ 20. Conveniently, Plaintiff attached as "Exhibit 1" a copy of the Blue Diamond Gallery page from where Plaintiff downloaded the Copyrighted Work. *See* Complaint ¶21, Exhibit 1; *see also* http://www.thebluediamondgallery.com/b/burden-of-proof.html.

The top of the Blue Diamond Gallery page contains a prominent disclaimer that reads:

3

**Important - Please Read**

The images on this site offered under a Creative Commons Attribution-ShareAlike license may be used for free including for commercial purposes subject to the terms of the license. Should you not be familiar with Creative Commons licenses including their attribution requirements then please read the license here.

*See* http://www.thebluediamondgallery.com/b/burden-of-proof.html.

Under that disclaimer is additional disclaimer text that reads:

The image below related to the word burden-of-proof is licensed by it's creator under a Creative Commons Attribution-ShareAlike license which permits the free use of the image for any purpose including commercial use and also permits the image to be modified, attribution required, see license details below and FAQ.

*Ibid.*

Under that second disclaimer is the Copyrighted Work with a watermark disclaimer stating, "Images may be used for free but attribution is required – see license." Conspicuously listed right below the Copyrighted Work is the following attribution and licensing information to be included by prospective licensees who wish to use the Copyrighted Work under a CC license:

CC BY-SA 3.0 Nick Youngson / Alpha Stock Images
Burden of Proof definition.
Burden of Proof synonyms

*Ibid.*

Prospective licensees need only copy and paste that attribution text in order to fully comply with the terns of the CC License. Finally, below the CC License text is a more detailed explanation of the Copyrighted Work and the licensing terms:

**DETAILS:**

**Title:** Burden of Proof

**File size:** 105 KB

**Free License permits:** Sharing, copying and redistributing in any medium or format including adapting, remixing, transforming, and burden-of-proofing upon the material for any purpose, even commercially. Attribution required.

4

**License:** Creative Commons 3 - CC BY-SA 3.0

**Required attribution:** Alpha Stock Images - link to - http://alphastockimages.com/

**Original Author:** Nick Youngson - link to - http://nyphotographic.com/

**Original Image:** http://www.thebluediamondgallery.com/b/burden-of-proof.html
Should the above license or the size of the image not be suitable for your use then you
can purchase the original full size image on a rights managed basis at here for a few
dollars.

*Ibid.*

On or about January 19, 2018, RM Media discovered that Plaintiff was using the
Copyrighted Work on Plaintiff's website without fulfilling the conditions of the license.
Attached hereto as "Exhibit A" is a true and correct copy of the post on Plaintiff's website
featuring the Copyrighted Work and showing that Plaintiff did not comply with the express
attribution requirement to qualify for a CC License. RM Media did not have a record of Plaintiff
purchasing a paid license for use of the Copyrighted Work.

Shortly thereafter, RM Media retained Defendants Mathew K. Higbee and The Law Firm
of Higbee and Associates (collectively the "Higbee Defendants") to send correspondence to
Plaintiff regarding its unlicensed use of the Copyrighted Work. Correspondence was
subsequently sent on or about January 30, 2018, and apparently received by Plaintiff on or about
February 5, 2018. Complaint ¶ 22. Thereafter, Plaintiff began communicating with the Higbee
Defendants. Plaintiff denied any copyright infringement or liability, and never made any
payments or concessions to the Higbee Defendants or clients whom the Higbee Defendants were
representing.

On June 8, 2018, Plaintiff filed the instant lawsuit, alleging two claims/causes of action.
The Plaintiff's "First Claim for Relief," alleged against all Defendants, purports to be a federal
copyright claim for a declaratory judgment that it never committed any copyright infringements

in connection with its use of RM Media's Copyrighted Work. Plaintiff additionally seeks a declaratory judgment insulating it from any claims for breach of contract based on its use(s) of the Copyrighted Work.

Plaintiff's "Second Claim for Relief," alleged against all Defendants, is a supplemental state claim under section 349 of New York's General Business Law. For the supplemental state claim, Plaintiff alleges that the Higbee Defendants somehow violated section 349 for simply making pre-litigation settlement demands on the Plaintiff—in their representative capacity as attorneys for their clients/owners of the Copyrighted Work—for the Plaintiff's copyright infringement. For the following reasons, both of Plaintiff's claims should be dismissed with prejudice.

<h3 style="text-align:center">STANDARD OF REVIEW ON A MOTION TO DISMISS</h3>

On a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555 (2007).  Although the allegations of a complaint are assumed true for purposes of a 12(b)(6) motion, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)(quoting *Twombly*, 550 U.S. at 555)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

/ / /

/ / /

6

**ARGUMENT**

I.   **Plaintiff's Declaratory Relief Claim Must Be Dismissed As No Case Or Controversy Exists Between Plaintiff And The Higbee Defendants; And Any Case Or Controversy That May Exist Must Be Resolved In The Higbee Defendant's Favor.**

   A.   **Plaintiff Has Not Alleged An Actual Case or Controversy.**

   The Declaratory Judgment Act, 28 U.S.C. § 2201(a) (the "Act"), limits the jurisdiction of the United States courts to enter declaratory judgments to cases of actual controversy in the following words: "In a case of actual controversy, within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relation of any interested party seeking such declaration." 28 U.S.C. § 2201(a).   Such legislative limitation was necessary in order to satisfy the requirements of Article III of Section 2 of the Constitution, which limits the jurisdiction of courts to 'cases' and 'controversies'. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227 (1937). In determining whether a case of actual controversy exists to establish subject-matter jurisdiction, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273 (1941); *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011).

   Here, the Complaint does not present such a controversy as to the Higbee Defendants. As Plaintiff acknowledges, neither of the Higbee Defendants purport to hold any interest in the Copyrighted Work at issue. *See* Complaint ¶¶ 28-29. As alleged in the Complaint, Plaintiff seeks a declaration that "(a) Plaintiff's use of the Image under license does not constitute copyright infringement as a matter of law, and (b) Defendants cannot sustain any claim for breach of contract (any license) because there are no resulting damages." Complaint ¶ 49. Since, as

7

Plaintiff acknowledges, the Higbee Defendants do not own any interest in the Copyrighted Work, to the extent that an actual case or controversy does exist regarding infringement of the Copyrighted Work or breach of a license agreement, such controversy exists only between Plaintiff and the holder of the rights to the Copyrighted Work, not the Higbee Defendants. At all relevant times, the Higbee Defendants were acting solely in their representative capacity the attorneys for their clients (the owners of the Copyrighted Work). Therefore, Plaintiff cannot state a claim for the declaratory relief against the Higbee Defendants, and the claim must be dismissed without leave to amend.

**B.  Any Case or Controversy that May Exist Regarding Copyright Infringement or Breach of Contract Must be Resolved in Favor of the Higbee Defendants.**

Even if the Court finds the existence of a case or controversy regarding any allegations pertaining to copyright infringement or breach of contract, the Plaintiff's own allegations—taken as true—must be resolved in Defendants' favor.   In its Complaint, Plaintiff admits that on December 26, 2017, it used the Copyrighted Work on its website. Complaint ¶¶ 18-19. Plaintiff admits that it took the Copyrighted Work from the Blue Diamond Gallery website. Complaint ¶¶ 19-20. Conveniently, Plaintiff attached as "Exhibit 1" a copy of the Blue Diamond Gallery page from where Plaintiff downloaded the Copyrighted Work. Complaint ¶21, Exhibit 1; *see also* http://www.thebluediamondgallery.com/b/burden-of-proof.html.

The top of the Blue Diamond Gallery page contains a prominent disclaimer that reads:

**Important - Please Read**
The images on this site offered under a Creative Commons Attribution-ShareAlike license may be used for free including for commercial purposes subject to the terms of the license. Should you not be familiar with Creative Commons licenses including their attribution requirements then please read the license here.

*See* http://www.thebluediamondgallery.com/b/burden-of-proof.html.

Under that disclaimer is additional disclaimer text that reads:

The image below related to the word burden-of-proof is licensed by it's creator under a Creative Commons Attribution-ShareAlike license which permits the free use of the image for any purpose including commercial use and also permits the image to be modified, attribution required, see license details below and FAQ.

*See* http://www.thebluediamondgallery.com/b/burden-of-proof.html.

Under that disclaimer is additional disclaimer text that reads:

The image below related to the word burden-of-proof is licensed by it's creator under a Creative Commons Attribution-ShareAlike license which permits the free use of the image for any purpose including commercial use and also permits the image to be modified, attribution required, see license details below and FAQ.

*Ibid.*

Under that second disclaimer is the Copyrighted Work with a watermark disclaimer stating "Images may be used for free but attribution is required – see license." Conspicuously listed right below the Copyrighted Work is the following attribution and licensing information to be included by prospective licensees who wish to use the Copyrighted Work under a CC license:

CC BY-SA 3.0 Nick Youngson / Alpha Stock Images
Burden of Proof definition.
Burden of Proof synonyms

*Ibid.*

Prospective licensees need only copy and paste that attribution text in order to fully comply with the terns of the CC License. Finally, below the CC License text, is a more detailed explanation of the Copyrighted Work and the licensing terms:

**DETAILS:**

**Title:** Burden of Proof

**File size:** 105 KB

**Free License permits:** Sharing, copying and redistributing in any medium or format including adapting, remixing, transforming, and burden-of-proofing upon the material for any purpose, even commercially. Attribution required.

**License:** Creative Commons 3 - CC BY-SA 3.0

**Required attribution:** Alpha Stock Images - link to - http://alphastockimages.com/

**Original Author:** Nick Youngson - link to - http://nyphotographic.com/

**Original Image:** http://www.thebluediamondgallery.com/b/burden-of-proof.html
Should the above license or the size of the image not be suitable for your use then you can purchase the original full size image on a rights managed basis at here for a few dollars.

*Ibid.*

As the Second Circuit has indicated, "[i]f the nature of a licensee's violation consists of a failure to satisfy a condition to the license, it follows that the rights dependent upon satisfaction of such condition have not been effectively licensed, and therefore, any use by the licensee is without authority from the licensor and may therefore, constitute an infringement of copyright." *Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998) quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § § 10.15[A], at 10-121; (citations omitted); *see also Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 483-84 (5th Cir.1981). A condition has been defined as "any fact or event which qualifies a duty to perform." *Costello Publ'g Co. v. Rotelle*, 670 F.2d 1035, 1045 n. 15 (D.C.Cir.1981) (citing Corbin, Conditions in the Law of Contract, 28 Yale L.J. 739 (1919)).

Here, the Plaintiff committed copyright infringement by using the Copyrighted Work on its own website without providing the proper attribution to the owner of the Copyrighted Work— which was an express condition of the CC License and conspicuously stated on the Blue Diamond Gallery webpage where Plaintiff admittedly obtained the Copyrighted Work. Nearly identical conduct has previously given rise to a finding of willful copyright infringement. In *Philpot v. Music Times LLC*, 2017 U.S. Dist. LEXIS 48454 (S.D.N.Y. Mar. 29, 2017)(report and

10

recommendation), *adopted by Philpot v. Music Times LLC*, 2017 U.S. Dist. LEXIS 70744 (S.D.N.Y., May 9, 2017), a professional photographer created two photographs of musicians John Mellencamp and Norah Jones which he offered for free through a Creative Commons 3.0 License, identical to the CC License at issue in this case, which required that any licensee place the photographers' name and website URL below the photographs as a condition to use the license. *Id.* at *1-*5. A music news website subsequently used the photographs in two separate articles without providing the required attribution. *Id.* at *6-*7. The Court addressed whether the defendant's failure to include the requisite attribution gave rise to a claim of copyright infringement as follows:

> Here, Plaintiff has plausibly alleged his ownership and registration of a copyright covering a compilation of his works, including both the Mellencamp Photograph and the Jones Photograph. [citation.] He has also alleged that the effective date of the relevant registration was May 13, 2013. [citation.] In addition, Plaintiff has plausibly alleged that, by copying and reproducing the Jones Photograph in November 2013 and the Mellencamp Photograph in December 2013, without the attribution required by the Creative Commons license that Plaintiff offered, Defendant effectively rejected (or went outside the scope of) that license and thereby infringed Plaintiff's copyright. [citations.]
>
> Based on these allegations, Plaintiff has adequately established Defendant's liability, as a matter of law, for copyright infringement. [citations]. By alleging that Defendant ignored the directions provided by the Wikipedia site for inputting the attribution information required for a license [citation] Plaintiff has also adequately established that Defendant's infringement was willful."

*Philpot v. Music Times LLC*, 2017 U.S. Dist. LEXIS 48454, *19-*21 (S.D.N.Y. Mar. 29, 2017) (report and recommendation), *adopted by Philpot v. Music Times LLC*, 2017 U.S. Dist. LEXIS 70744 (S.D.N.Y., May 9, 2017).

As explained above, RM Media offers its Copyrighted Work through a CC License, identical to the license at issue in *Philpot*. In its Complaint, Plaintiff admits that on December 26, 2017 it used the Copyrighted Work on its website. Complaint ¶¶ 18-19. Plaintiff admits that it

took the Copyrighted Work from the Blue Diamond Gallery website, which contained the express conditions to obtaining a license. Complaint ¶ 20, Exhibit 1.

On or about January 19, 2018, RM Media discovered that Plaintiff was using the Copyrighted Work on Plaintiff's website without fulfilling the conditions of the license. Attached hereto as "Exhibit A" is a true and correct copy of the post on Plaintiff's Website featuring the Copyrighted Work and showing that Plaintiff did not comply with the express attribution requirement to qualify for a CC License. The Plaintiff had evidently used the Copyrighted Work on its website without providing the requiring attribution as stated on the Blue Diamond Gallery site where acquired the image. RM Media did not have a record of Plaintiff purchasing a paid license for use of the Copyrighted Work.

Subsequently, RM Media retained the Higbee Defendants to send correspondence to Plaintiff regarding its unlicensed use of the Copyrighted Work. Correspondence was sent on or about January 30, 2018, and apparently received by Plaintiff on or about February 5, 2018. Complaint ¶ 22. Thereafter, Plaintiff began communicating with the Higbee Defendants. Even while admitting that it never provided the required attribution in connection with its use, Plaintiff ultimately denied any copyright infringement or liability, and never made any payments or concessions to the Higbee Defendants or the clients whom the Higbee Defendants were representing.

Therefore, even if this Court concludes that an actual case or controversy exists between Plaintiff and the Higbee Defendants with respect to Plaintiff's first claim for declaratory judgment, the claim cannot be resolved in Plaintiff's favor, whether as a matter of copyright infringement, or as a matter of breach of contract.  This is because Plaintiff committed copyright

infringement as a matter of law by failing to meet an express condition (attribution) of the CC license on which it relies for its use of the Copyrighted Work.

## II. Plaintiff's Supplemental State Claim Under NY Gen. Bus. Law § 349 Must Be Dismissed As Plaintiff Failed To Allege Injury, The Alleged Conduct Is Not Consumer Oriented And The Alleged Conduct Is Protected By Litigation Privilege.

Plaintiff's supplemental state claim must likewise be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiff alleges that Higbee essentially conspired with one of its clients to commit acts which it alleges to be "deceptive" in violation of New York General Business Law section 349. As a threshold matter, Plaintiff's supplemental state claim is purely based on state law; as such, it should be dismissed if the federal claim is dismissed as there would otherwise be no independent basis for federal court jurisdiction. A district court may dismiss an action for want of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)).

However, even if the federal claim is not dismissed, the supplemental state claim under NY Gen. Bus. Law § 349 must be dismissed as it fails to state a claim because Plaintiff has failed to allege that it suffered any injury, that the conduct at issue is consumer oriented, and because the alleged conduct is protected by the litigation privilege. A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson, 631 F.3d at 63 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); see also *Pension Ben.*

*Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although the allegations of a complaint are assumed true for purposes of a 12(b)(6) motion, this does not apply "to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

As explained below, the allegations in the Complaint against the Higbee Defendants are devoid of facts that plausible state a claim for relief under NY Gen. Bus. Law § 349 against the Higbee Defendants.

A.   **Plaintiff Has Failed To Allege That It Suffered Any Injuries Or Damages From The Alleged Unlawful Actions.**

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 349(a). While the statute is generally intended for enforcement by the state attorney general, it allows a private party to pursue a limited private right of action as follows:

> [A]ny person who has been *injured* . . . may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.

*Id*. § 349(h)(emphasis added).

Under the express terms of the statute, in order to pursue a private cause of action under section 349, the private plaintiff must—as a threshold matter—have suffered an *injury* as a result of the alleged act or practice. The Second Circuit has further emphasized this injury element as an absolute requirement to sustain a claim under section 349:

"To state a claim under § 349, a plaintiff must allege that: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."

*Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)

Section 349 mandates a showing that plaintiff's injury be a result of reliance on a materially deceptive act or practice. *See Goshen v. Mutual Life Ins. Co.*, 1997 N.Y. Misc. LEXIS 486, at *12 (Sup. Ct. N.Y. Cty., Oct. 21, 1997) (dismissing claim because plaintiff could not "allege reliance upon the alleged misrepresentation"); *Gershon v. Hertz Corp.*, 626 N.Y.S.2d 80, 81 (App. Div. 1995) (finding allegations did not show "materially deceptive conduct on which plaintiff relied to his detriment"); *cf. Ortho Pharmaceutical Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 697 (2d Cir. 1994) (dismissing section 349 claim because plaintiff "failed to show that it suffered any injury as a result of … advertisements").

Here, the Plaintiff's Complaint fails to allege any facts that show it has suffered any injuries as a result of any allegedly unlawful acts/practices of Higbee.  In fact, the Plaintiff's own allegations in the Complaint affirmatively indicate that it has <u>not</u> suffered any injuries whatsoever. *See e.g.* Complaint, ¶ 36. Plaintiff alleges that the Higbee Defendants committed "numerous wrongful and deceptive acts" in connection with the Copyrighted Work belonging to a RM Media a client of the Higbee Defendants, by sending correspondence on their client's behalf alerting Plaintiff to RM Media's claims of copyright infringement.  *See* Complaint, ¶ 45.

Plaintiff, a sophisticated law firm, has not alleged how receiving legal correspondence from the Higbee Defendants has cause Plaintiff any discernable injury. The Complaint alleges that the Higbee Defendants merely "attempted to extract" on behalf of their client, a settlement for Plaintiff's unauthorized use of the client's copyrighted Image. *Id.* at ¶ 33. Plaintiff does not allege in the Complaint that it made any type of settlement payments to the Higbee Defendants.

Rather, the Complaint alleges that, after corresponding briefly with the Higbee Defendants, Plaintiff "discontinued use of the Image and considered the matter closed, and requested that Defendants likewise consider the matter closed." *Id*. ¶ 36. Thus, Plaintiff has failed to allege that it suffered any damages from the Higbee Defendants' alleged unlawful activities, or that it detrimentally relied on any alleged materially deceptive acts or practices of the Higbee Defendants.  Therefore, Plaintiff's claim must be dismissed.

**B.      Plaintiff's Admitted Failure To Understand The Expressly Stated Contractual Licensing Terms Cannot Give Rise To A Claim Under §349.**

The standard for whether an act or practice is misleading is objective, requiring "a showing that a reasonable consumer would have been misled by the defendant's conduct." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996). This objective standard is imposed in order to avoid "a tidal wave of litigation." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 647 N.E.2d 741, 623 N.Y.S.2d 529, 533 (1995).

As explained in detail above, the conditions of the license for the Copyrighted Work were clearly stated on the Blue Diamond Gallery website, which is where Plaintiff admittedly obtained the Copyrighted Work. As demonstrated by Exhibit 1 attached the Complaint, any prospective licensee who visits the Blue Diamond Gallery website is given multiple notices that the Copyrighted Work is offered under a CC License. The fact that the Plaintiff—a large, well-established law firm with dozens of legally trained counsel—admittedly failed to read the express license terms despite ample notice, cannot constitute a deceptive business practice because failure to read material containing allegedly deceptive representations or an alleged failure to understand the content is insufficient to state a § 349 claim. *See, e.g., Goldman Stone Trading, Inc. v. Wayne Electro Systems, Inc.*, 889 N.Y.S.2d 72, 74 (2d Dep't 2009) ("A party

16

who executes a contract is presumed to know its contents and to assent to them and an inability to understand the English language, without more, is insufficient to avoid this general rule.").

Additionally, Plaintiff repeatedly alleges that "Defendants cannot sustain any claim for breach of contract (the license) because there are no resulting damages." Complaint ¶¶ 3, 49. However, "[p]rivate contract disputes, unique to the parties, for example, would not fall within the ambit of the statute . . . ." *Oswego* 623 N.Y.S.2d at 532. Thus, Plaintiff's admitted failure to read or understand the express terms of the CC License is not only contractual in nature, but cannot give rise to a 349 claim for deceptive practices against the Higbee Defendants.

Given that the Plaintiff's conduct as described in its Complaint establishes that Plaintiff engaged in copyright infringement as a matter of law, RM Media was free to pursue whatever remedies it had (whether based on copyright or breach contract) and free to retain the services of counsel to correspond with Plaintiff prior to any litigation. *See e.g., Sabeno v. Mitsubishi Motors Credit of Am., Inc*., 20 A.D.3d 466, 469, 799 N.Y.S.2d 527, 530 (App. Div. 2005)("By exercising its contractual remedies, the defendant engaged in lawful and non-deceptive behavior that did not violate General Business Law § 349").

C.     **Plaintiff's Supplemental State Claim Under NY Gen. Bus. Law § 349 Cannot Be Sustained Because It Involves A Private Dispute Which Does Not Affect The Consuming Public At Large.**

New York General Business Law § 349 provides that "[deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. L. § 349(a). Section 349 is part of Article 22-A of the General Business Law, which is collectively known as the "Consumer Protection from Deceptive Acts and Practices". As the New York State Court of Appeals has repeatedly indicated, "[s]ection 349 does not grant a private remedy for every improper or illegal business practice,

17

but only for conduct that tends to deceive consumers" in the consuming public at large. *Carlson v American Intl. Group, Inc.,* 30 N.Y.3d 288, 309 (Ct. App. 2017)(quoting *Schlessinger v Valspar Corp.,* 21 N.Y.3d 166, 172 (Ct. App. 2013)); *see also Keshin v. Montauk Homes,* LLC, 2018-04316 (NY App.—2nd Dept, Jun. 13, 2018)(same). Thus, in order to satisfy section 349 "as a threshold matter", a plaintiff's "claims must be predicated on a deceptive act or practice that is 'consumer oriented'". *Carlson,* 30 N.Y.3d at 309 (citations omitted).

In *Montauk Homes,* the Second Department affirmed a lower court decision dismissing a 349 claim for failure to state a claim where the plaintiffs' 349 claim was simply a private dispute in the guise of a consumer-based action. *Montauk Homes, LLC,* 2018-04316 (NY App.—2nd Dept, Jun. 13, 2018). The plaintiffs in *Montauk Homes* sued a real estate developer to recover damages for alleged "deceptive trade practices aimed at consumers". *Ibid.* The plaintiffs' complaint alleged that the real estate developer had marketed a vacant lot to the public as a "package deal with a house to be built". The plaintiffs argued that the developer was deceptive by marketing the deal as such because the plaintiffs were required to enter into a separate contract with another developer after purchasing the vacating lot for the actual construction of the home on the vacant lot. *Ibid.*

Rejecting the plaintiffs' argument, the Second Department concluded that there was no cause of action under section 349 because—despite the plaintiffs' specific allegation that the developer had "engaged in deceptive trade practices aimed at consumers"—the matter ultimately involved only a private contract dispute and not one "involving consumers at large". *Ibid.* The court also reasoned that the plaintiffs were aware of the multi-part structure of the transaction at the time they entered into, and additionally, had the assistance of counsel. *Ibid.*

Like *Montauk Homes*, the alleged dispute giving rise to the instant action is a private dispute. Plaintiff is large and well-established private law firm composed of dozens of legally trained counsel. Plaintiff the Higbee Defendants contacted Plaintiff on behalf of their client in order to facilitate settlement for what was, in the Higbee Defendants' professional legal judgment, Plaintiff's infringing use of the Copyrighted Work. After disputing the Higbee Defendant's pre-litigation claims of infringement, Plaintiff preemptively brought the instant action.

"[T]he gravamen of a § 349 claim is consumer injury or harm to the public interest." *City of New York v. Smokes-Spirits.com, Inc*., 541 F.3d 425, 455 (2d Cir. 2008)(citation omitted). "The critical question, then, is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). Thus, a plaintiff must show that the challenged act or practice had "a broader impact on consumers at large." *Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 490 (2d Cir.2014).

The correspondences sent by the Higbee Defendants which gave rise to this action was directed specifically at Plaintiff and did not involve the consuming public at large.  *See RFP LLC v. SCVNGR, Inc*., 788 F.Supp.2d 191, 199 (S.D.N.Y. 2011)(Trademark cease and desist letter does not fall under the purview of 349 because the letter was only directed at the plaintiff and not the public at large). Indeed, Plaintiff's acts of infringement as described by the Higbee Defendants in the correspondence and as admitted in the Complaint, are specific to Plaintiff only and not to any other member of the public.

Since the correspondence sent by the Higbee Defendants was triggered by Plaintiff's specific infringing conduct unique to Plaintiff, it necessarily did not implicate the public at large.

Additionally, the Higbee Defendants did not at any relevant time own the Copyrighted Work and had no involvement with its distribution or licensing of the Copyrighted Work. The Higbee Defendants' correspondence to Plaintiff regarding settlement was made entirely on behalf of the clients they represented, and the Plaintiff's own allegations even recognize as such. *See* Complaint, ¶ 27.  To the extent that Plaintiff alleges that the nature of the CC Licensing terms as displayed on the Blue Diamond Gallery website somehow constitutes a deceptive practice, such allegations do not implicate any conduct allegedly taken by the Higbee Defendants.

### D.   The Supplemental State Claim Must be Dismissed Because It Stems from Alleged Activities of Counsel Which Are Subject to the Litigation Privilege.

Even if the various legal and pleading deficiencies in Plaintiff's Complaint, as discussed above, can be excused, Plaintiff's supplemental state claim must still be dismissed because the allegedly unlawful actions/activities which Plaintiff complains of are protected by the "litigation privilege" doctrine. New York, like many other states, has long recognized the common law litigation privilege doctrine which protects litigation and pre-litigation communications between litigants or potential litigants against retaliatory suits such as this one.

The litigation privilege doctrine has been recognized by NY appellate courts for over 100 years, and as recently as this June. *See Schwartz v. Chan*, 2018-03930 (1st Dept., 6/5/18)(statements "prepared in connection with a threatened litigation" is "protected by the litigation privilege"); *see also Sexter & Warmflash*, 38 A.D.3d at 174 (1st Dept 2007)("[A] letter among parties and counsel on the subject of pending or prospective litigation . . . enjoys the protection of the absolute privilege"); *Vodopia v. Ziff-Davis Pub. Co*., 243 A.D.2d 368, 368 (1st Dept 1997)(absolute privilege applied to "a letter written . . . during the course of negotiations to settle a copyright lawsuit threatened by plaintiff's client"). *Sklover v. Sack*, 102 A.D.3d 855, 856 (2d Dept 2013)(statements made for purposes of settling a prospective malpractice litigation

afforded absolute privilege); *see also* Restatement (Second) of Torts § 767 cmt. c, at 31 (instituting litigation or threatening to institute litigation must be done in bad faith to support a claim for contract interference); *id.* § 773 illus. 1 (a good faith threat to pursue legal proceedings is not improper).

In *Front, Inc. v. Khalil*, the New York Court of Appeals held that pre-litigation statements made by counsel in connection with anticipated litigation are subject to a "qualified privilege" against liability. 24 N.Y.3d 713, 715 (Ct. App. 2015). Under this variation of the litigation privilege, the Court of Appeals held that pre-litigation statements of counsel are privileged so long as such statements are "pertinent to a good-faith anticipated litigation". *Id.* at 720. In continuing to recognize New York's recognition of the doctrine, the Court of Appeals explained the policy behind it as follows:

> The rationale supporting the application of privileged status to communication made by attorneys during the course of litigation is also relevant to pre-litigation communication. When litigation is anticipated, attorneys and parties should be free to communicate in order to reduce or avoid the need to actually commence litigation. Attorneys often send cease and desist letters to avoid litigation. Applying privilege to such preliminary communication encourages potential defendants to negotiate with potential plaintiffs in order to prevent costly and time-consuming judicial intervention.

*Id.* at 719.

Here, Plaintiff's claims against the Higbee Defendants stem from the correspondences Plaintiff received from the Higbee Defendants in their representative capacity as attorneys for their clients, the owners of the Copyrighted Work. The Higbee Defendants were retained to correspond with Plaintiff for what was evidently misuse of their client's Copyrighted Work, and to attempt to settle the claim without resorting to costly litigation. Such conduct is undoubtedly protected by the litigation privilege.

/ / /

21

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against Mathew K. Higbee and Higbee &
Associates should both be dismissed with prejudice.


Dated:  June 29, 2018                           HIGBEE & ASSOCIATES


                                                **/s Rayminh L. Ngo**
                                                Rayminh L. Ngo, Esq.
                                                EDNY #RN4834
                                                HIGBEE & ASSOCIATES (*Of Counsel*)
                                                1504 Brookhollow Dr., Ste. 112
                                                Santa Ana, CA 92705
                                                714-617-8336 (Ph)
                                                714-597-6559 (Fax)
                                                rngo@higbeeassociates.com
                                                *Attorney for Defendants Mathew K. Higbee &
                                                Higbee & Associates*

22

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by electronically filing with the Clerk of the Court using CM/ECF on this **29th** day of **June, 2018**, on all counsel or parties of record on the service list below.

<u>**/s/ Rayminh L. Ngo**</u>
Rayminh L. Ngo, Esq.

## <u>SERVICE LIST</u>

Kevin Schlosser
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
Garden City, New York 11530
kschlosser@msek.com