UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.,

                                        Plaintiff,

          -against-

MATHEW K. HIGBEE, Esq.,
NICK YOUNGSON,
RM MEDIA, LTD.,
and HIGBEE & ASSOCIATES,

                                        Defendants.

Docket No.: 18-cv-3353 (ADS) (ARC)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO HIGBEE DEFENDANTS' MOTION TO DISMISS**

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
(516) 741-6565

*Attorney for Plaintiff (Pro Se)*

<u>**TABLE OF CONTENTS**</u>

**PAGE(S)**

Table of Authorities ...................................................................................................ii-v

Preliminary Statement...................................................................................................1

FACTS ............................................................................................................................3

ARGUMENT ..................................................................................................................7

I.      THE FACTUAL ALLEGATIONS THAT ARE OUTSIDE THE SCOPE OF
        PLAINTIFF'S COMPLAINT, WHICH THE HIGBEE DEFENDANTS
        HEAVILY RELY UPON, SHOULD NOT BE CONSIDERED ON THIS
        MOTION ............................................................................................................7

II.     NOT ONLY IS THE HIGBEE DEFENDANTS' MOTION DEFECTIVE,
        BUT ALL OF THEIR CONTENTIONS ARE MERITLESS...............................9

        A.      There is No Copyright Infringement Here.................................................9

        B.      The Higbee Defendants' Contention That There is No Controversy
                is Meritless, as They Materially Misrepresent the Case Law ....................11

        C.      The Higbee Defendants Were a Part of a Larger Deceptive Scheme
                That is Consumer-Oriented, and Caused Direct Injury to Plaintiff
                Under N.Y. Gen. Bus. L. § 349. ..............................................................18

                1.      Consumer-Oriented Scheme .........................................................18

                2.      Injury to Plaintiff..........................................................................20

                3.      The Higbee Defendants Misconstrue the Plaintiff's Complaint....22

        D.      The Higbee Defendants' Claim of Immunity is Unsupported by Law as
                There is No Absolute Privilege in NY, and Qualified
                Privilege does not Protect Threats of Baseless Litigation .........................24

CONCLUSION................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................................3, 8

*Bambu Sales, Inc. v. Ozak Trading, Inc.,*
    58 F.3d 849 (2d Cir. 1995)...........................................................................................12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................................3, 8

*Canario v. Gunn,*
    300 A.D.2d 332 (2d Dep't 2002) ..................................................................................19

*Castle Rock Entm't v. Carol Pub. Grp., Inc.,*
    955 F. Supp. 260 (SDNY 1997)...................................................................................14

*City of New York v. Smokes-Spirits.Com, Inc.,*
    12 N.Y.3d 616 (2009) ..................................................................................................18

*Costello Publ'g Co. v. Rotelle,*
    670 F.2d 1035 (DC Cir. 1981) ......................................................................................16

*Dash v. Seagate Technology (US) Holdings, Inc.,*
    No. 13-cv-63292015, 2015 WL 11973674 (EDNY September 1, 2015) .................................21

*DiFolco v. MSNBC Cable LLC,*
    622 F.3d 104 (2d Cir. 2010)...........................................................................................8

*Doe v. Columbia University,*
    831 F.3d 46 (2d Cir. 2016)..........................................................................................7, 8

*Dual Groupe, LLC v. Gans-Mex LLC,*
    932 F.Supp.2d 569 (SDNY 2013) ...................................................................................8

*E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.,*
    No. 2:17-cv-01034, 2017 WL 4162309 (EDNY Sept. 19, 2017) (Spatt, J.)..............................8

*Elacqua v. Physicians' Reciprocal Ins.,*
    52 A.D.3d 886 (3d Dep't 2009) ...................................................................................19

*EMI Entm't World, Inc. v. Karen Records, Inc.,*
    806 F. Supp. 2d 697 (SDNY 2011)...............................................................................14

ii

*Finkel v. Romanowicz,*
    577 F.3d 79 (2d Cir. 2009)................................................................12

*Fonte v. Bd. Of Managers of Cont'l Towers Condo.,*
    848 F.2d 24 (2d Cir. 1988)................................................................8

*Front, Inc. v. Khalil,*
    24 N.Y.3d 713 (2015) ......................................................................24

*Genesco Ent., Div. of Lymutt Indus., Inc. v. Koch,*
    593 F.Supp. 743 (SDNY 1984)........................................................19

*Goldman Stone Trading, Inc. v. Wayne Electro Systems, Inc.,*
    67 A.D.3d 731 (2d Dep't 2009) .......................................................22

*Graham v. James,*
    144 F.3d 229 (2d Cir. 1998)....................................10, 14, 15, 16, 17, 18

*Grand Union Co. v. Cord Meyer Dev. Co.,*
    761 F.2d 141 (2d Cir. 1985)........................................................10, 15

*Hoy v. Inc. Village of Bayville,*
    765 F.Supp.2d 158 (EDNY 2011) .....................................................9

*I.A.E., Inc. v. Shaver,*
    74 F.3d 768 (7th Cir. 1996) ........................................................10, 16

*In re Independent Energy Holdings PLC,*
    154 F.Supp.2d 741 (SDNY 2001) .....................................................8

*Jacob Maxwell, Inc. v. Veeck,*
    110 F.3d 749 (11th Cir. 1997) ........................................10, 15, 16, 17

*John Wiley & Sons, Inc. v. DRK Photo,*
    882 F.3d 394 (2d Cir. 2018)..............................................................9

*Koch v. Acker, Merrall & Condit Co.,*
    18 N.Y.3d 940 (2012) ......................................................................18

*New York Univ. v. Continental Ins. Co.,*
    87 N.Y.2d 308 (1995) ................................................................19, 20

*North State Autobahn, Inc. v. Progressive Ins. Group Co.,*
    102 A.D.3d 5 (2d Dep't 2012) ...............................................18, 19, 20

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
    85 N.Y.2d 20 (1995) ..........................................................18, 19, 20, 21

iii

*Oxman v. Downs,*
999 F.Supp.2d 404 (EDNY 2014) (Spatt, J.)...........................................................................8

*Peer Int'l Corp. v. Pausa Records, Inc.,*
909 F.2d 1332 (9th Cir. 1990) ............................................................................................10

*Philpot v. Music Times LLC,*
No. 16-cv-1277, 2017 WL 9538900 (SDNY Mar. 29, 2017)
.............................................................................................................11, 12, 13, 14, 17

*Philpot v. Music Times LLC,*
No. 16-cv-1277, 2017 WL 1906902 (SDNY May 9, 2017) ...................................................11

*Rano v. Sipa Press, Inc.,*
987 F.2d 580 (9th Cir. 1993) ...................................................................................10, 16, 17

*Reed v. Garden City Union Free School Dist.,*
987 F.Supp.2d 260 (EDNY 2013) .........................................................................................8

*Septembertide Publ'g, B.V. v. Stein and Day, Inc.,*
884 F.2d 675 (2d Cir. 1989)................................................................................................16

*Small v. Lorillard Tobacco Co.,*
94 N.Y.2d 43 (1999) ..........................................................................................................21

*Stutman v. Chemical Bank,*
95 N.Y.2d 24 (2000) .....................................................................................................18, 21

*TVT Records v. Island Def Jam Music Group,*
412 F.3d 82 (2d 2005)...................................................................................................10, 16

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.,*
996 F.2d 1366 (2d Cir. 1993)..............................................................................................14

*Twombly v. Bell Atl. Corp.,*
313 F.Supp.2d 174 (SDNY 2003), *reversed and remanded for other reasons
by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................8

*United States Naval Inst. v. Charter Communications, Inc.,*
936 F.2d 692 (2d Cir. 1991)................................................................................................10

*Vodopia v. Ziff-Davis Publ. Co.,*
243 A.D.2d 368 (1st Dep't 1997) ........................................................................................24

*Wilner v. Allstate Ins. Co.,*
71 A.D.3d 155 (2d Dep't 2010) ...........................................................................................19

**Statutes**

Copyright Act, 17 U.S.C.
  § 203...................................................................................................................6
  §§ 504–05.........................................................................................................5-6

Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.........................................................2

N.Y. Gen. Bus. L. § 349 .......................................................2, 6, 10, 18, 19, 20, 22, 25

**Rules**

Fed. R. Civ. P.
  § 12(b)(6) .......................................................................................................... 6-7
  § 56.......................................................................................................................8

**Other Authorities**

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (6th ed. 1978)
  § 8D.03(A)(1) ....................................................................................................15
  § 10.15(A) .........................................................................................................17

Matthew Chan, *Higbee Associates Letter & Lawsuits Forum*, The ELI Forums,
available at https://www.extortionletterinfo.com/forum/higbee-letter-lawsuits-
forum/photog-nick-youngson-(higbee-assoc-)-lists-rm-media-ltd-in-template-
lawsuit/................................................................................................................23

### Preliminary Statement

Plaintiff instituted this action against defendants Mathew K. Higbee and his firm Higbee & Associates (together, "Higbee Defendants"), as well as against defendants RM Media, Ltd. and Nicholas Youngson (together, "UK Defendants") (all defendants collectively, "Defendants") for a declaratory judgment to protect itself against Defendants' scheme to extract monetary "settlements" by falsely claiming willful copyright infringement and purported entitlement to statutory copyright damages of $150,000, while knowing fully that their claims are objectively baseless. Contrary to Defendants' threats and assertions, the law is clear that they cannot establish a claim for copyright infringement or any statutory copyright damages under the circumstances described in the Complaint because: (1) the subject "image" ("Image") was offered for free use under a *contractual* license that granted broad, unlimited perpetual rights and required no conditions (including any attribution) *prior to* Plaintiff's access to, and use of, the Image; (2) there was no rescission of the license to use the Image for free at any time, including before Plaintiff discontinued its *de minimis* use of the Image; (3) Plaintiff immediately ceased use of the Image after receiving notice of a dispute concerning its use; (4) any failure to attribute credit to some unknown third-party (neither the author nor copyright holder of the Image) was innocent and inadvertent, not material nor willful; and (5) failure to attribute such credit, on its own, does not constitute copyright infringement. At most, any claim regarding the use of the Image would be for alleged breach of contract (the license), *not copyright infringement*, and therefore *no statutory copyright damages* would be available. As such, Defendants had no legitimate basis to try to extract a settlement (of over $5,000) based upon the threat of $150,000 of statutory copyright damages. Further, as the license granted broad, unlimited rights to use the Image for free, any *de minimis* failure to provide attribution under the license is not even actionable because Defendants cannot establish the elements of a breach of contract claim – namely damages.

As alleged in paragraph 3 of the Complaint: "Plaintiff brings this action for a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, determining and declaring that (a) Defendants have no legitimate claim for copyright infringement because Plaintiff did not infringe as a matter of law, and (b) Defendants have no cognizable or recoverable damages for breach of contract or otherwise." (The Complaint is annexed to the Declaration of Kevin Schlosser, dated July 13, 2018 ("Schlosser Decl."), as Exhibit ("Ex.") 1.) "Plaintiff also seeks relief, including damages, for Defendants' false, fraudulent and deceptive practices, which violate N.Y. Gen. Bus. L. § 349." *Id.* ¶ 4.

Only the Higbee Defendants now move to dismiss and attempt to shield themselves from liability by claiming that they were merely zealously advocating for their clients. The Higbee Defendants miss the point. The sole inquiry on this motion is merely whether Plaintiff's Complaint alleges claims for the declaratory judgment sought and for the claim under N.Y. Gen. Bus L. § 349. Whether Plaintiff ultimately prevails under those claims is not the issue on this motion. Plaintiff's Complaint clearly and sufficiently alleges the basis for the declaratory relief sought against all Defendants, including based upon the Higbee Defendants' use of their position as attorneys to collude with the UK Defendants in this scheme to mislead users of the UK Defendants' generic images and extract "settlements" from unsuspecting victims of their scheme. As attorneys purporting to be experienced in copyright law, the Higbee Defendants knew fully that no claim of copyright infringement existed here because the law is abundantly clear and well-settled. They also knew that the threat of litigation has a unique power to intimidate those they wrongfully accuse into settling claims to avoid costly litigation, and moreover, they knew that the fear of statutory liability of "up to $150,000," or more, would increase the chances of deceiving their victims into "settling" for a much lower, yet still significant amount of money. As the Complaint alleges, the

2

CASE 2:18-cv-03353-ADS-ARL Document 11 Filed 07/13/18 Page 9 of 31 PageID #: 197

Higbee Defendants have used this scheme to extract monetary payments from others in the public beyond Plaintiff.

As discussed below, there are numerous reasons why the Higbee Defendants' motion to dismiss Plaintiff's action pursuant to Federal Rule 12(b)(6) (the "Motion") should be denied. First, the Motion improperly relies on extraneous factual allegations (that are not even supported by any evidentiary foundation or declaration from anyone with personal knowledge), for which they have offered no basis for the court to consider on such Motion. Defendants also rely on outdated and wildly inapposite case law, as well as ineffective and incorrect arguments. As the Higbee Defendants fail to satisfy their burden to show that Plaintiff has not alleged "enough facts to state a claim to relief that is plausible on its face[,]" their Motion must be denied. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## FACTS

The facts set forth below are taken from Plaintiff's Complaint, which must be accepted as true for the purposes of this Motion. As alleged in the Complaint, Defendants' scheme to claim copyright infringement and statutory damages to extract monetary settlements is based upon the following:

> An individual[]takes photographs . . . . [and a] copyright registration is filed . . . for the subject photos. The photos are then made available on the internet, and easily found through the use of common search terms of the text in the photos, for anyone to copy the photos and use such in whatever manner and for whatever purpose they wish, including for commercial use. On the website page where the photo is found, no charge or any fee is requested for use of the photo as it appears. . . . Although on the original website where the photo is located, the photo is offered free under license, there is also a free "shared" form of license agreement on an entirely different page and website . . . that does not even contain the names of the parties to that form of license or any place in which either party can sign or agree to the terms.
>
> In their pursuit of catching innocent victims, Defendants then troll the internet . . . . Once Defendants identify someone who has used the photo(s) and unwittingly failed to include the "attribution" that is requested[], Defendants launch their

extortionate tactics to harass, intimidate and scare the user into paying thousands of dollars. Although[], a party called "Blue Diamond Gallery" is purportedly making the photos available, Defendants do not purport to assert claims on behalf of "Blue Diamond Gallery" or the individual who filed the actual copyright registration, or the entity for which an attribution is requested. . . . As part of their extortionate tactics, [the UK] Defendants send threatening letters through use of [the Higbee Defendants] to the unsuspecting victims demanding thousands of dollars to "settle," claiming[]copyright infringement and[]statutory damages of up to $150,000.

Defendants' demand letter does not provide any factual basis under which damages of up to $150,000 would ever be awarded. In fact, contrary to the assertions in the demand letter, there is no copyright infringement under the circumstances because the photos are freely made available to the user under a "license," which thereby precludes a claim for copyright infringement and simply renders the use subject to a mere alleged claim of breach of the "license" . . . for which no actual damages can be proved, certainly not the thousands of dollars deceptively demanded by Defendants. Defendants then continue their harassing conduct by repeatedly attempting to extract some form of "settlement" money from their victims, including threatening suit, or in some instances, bringing suit and then quickly settling and/or dismissing such suits.

Schlosser Decl. Ex. 1, at Compl. ¶ 2(a)–(k).

On or about December 26, 2017, Plaintiff became a target of the Defendants' scheme when it published a blog post, and when posting the title, a clerk in Plaintiff's marketing department used the Image she found on the Blue Diamond Gallery website (the "Website"). *See id.* ¶ 18–19. The Image was marketed on that Website as "burden-of-proof *free pictures* for your web site." *Id.* ¶ 19 (emphasis added); *see also* Schlosser Decl. Ex. 1, at Ex. 1 to Compl. pg. 1 On the Website page where the Image was found, the license applicable to free use stated only: "**Free License permits**: Sharing, copying and redistributing in any medium or format including adapting, remixing, transforming, and burden-of-proofing [*sic.*] upon the material for any purpose, even commercially. Attribution required." Schlosser Decl. Ex. 1, at Ex. 1 to Compl. pg. 2 (emphasis in original); *see also* Schlosser Decl. Ex. 1, at Compl. ¶ 2(f–g).

On February 5, 2018, Plaintiff received a letter from the Higbee Defendants ("Demand I"), in which they claimed to represent Defendant RM Media concerning the Image that was allegedly

copyrighted by Defendant Youngson. Schlosser Decl. Ex. 1, at Compl. ¶ 22, 27–28. In Demand I, the Higbee Defendants falsely claimed that Plaintiff was an infringer of copyright because it failed to include the requested attribution with the Image and threatened that "[i]f forced to go to court, [Defendants] will ask for the maximum relief possible, which may include statutory damages under 17 U.S.C. ¶ [*sic*] 504 for up to $150,000 for intentional infringement or $30,000 for unintentional infringement." *Id.* ¶ 29. The Higbee Defendants demanded Plaintiff immediately access an online account and pay $5,280 to "settle" a claim of copyright infringement, "even though Defendants knew full well that there was no legal basis for their claim." *Id.* ¶ 30–34. Demand I provided thirty (30) days to comply, but the Higbee Defendants nonetheless sent multiple harassing communications and threats before expiration of the 30 days. *Id.* ¶ 35.

When it received Demand I, Plaintiff immediately removed the Image from its website and discontinued its use altogether. *Id.* ¶ 23. On February 13, 2018, Plaintiff notified the Higbee Defendants of such, informed them that any failure to attribute credit to the third-party—who was neither Defendant RM Media (the copyright holder) nor Defendant Youngson (the author)—was "inadvertent, innocent and unintentional," and inquired into the Higbee Defendants' basis for the infringement claim. *See id.* ¶ 25, 36. The Higbee Defendants then simply continued to send threatening emails and calls to Plaintiff demanding payment, which the Higbee Defendants escalated with a letter that included a draft of a civil complaint that the Higbee Defendants threatened to file against Plaintiff ("Demand II"). *Id.* ¶ 37–38, 42.

Demand II repeated the false claim that Plaintiff "engaged in copyright infringement when it posted [the] client's copyrighted image on its website without a valid licensing agreement," despite the Higbee Defendants knowing full well that *the Image was made available by license*. *Id.* ¶ 39–40. The Higbee Defendants also asserted that Plaintiff willfully infringed the copyright, entitling the UK Defendants "to recover Statutory damages of up to $150,000 for each

infringement and may also recover attorney fees and court costs. *See* 17 U.S.C. §§ 504 & 505."
*Id.* ¶ 41.

At all times, the Defendants' claims of copyright infringement were false because the
Image was offered under a license for free use and thus, as a matter of law, only subject to claims
for breach of contract (the license). *Id.* ¶ 44. As purportedly experienced copyright attorneys, the
Higbee Defendants knew the well-settled law on this matter, but still chose to use their semblance
of experience and authority on the law to collude with the UK Defendants in this scheme to lure
users, including Plaintiff, to the UK Defendants' websites by offering free images, and then,
deceive them into "settling"—under false claims of copyright infringement—by creating a belief
that if the Higbee Defendants' "generously low" offer of a few thousand dollars were accepted,
costly litigation and ultimate liability for over $150,000 in damages would be avoided.

The foregoing is the factual basis for Plaintiff's request for a judicial declaration that there
is no copyright infringement under the circumstances here and no entitlement to the statutory
damages that form the basis of the threats to extort the money that Defendants demanded to "settle"
those fraudulent and meritless claims.  In addition, the Higbee Defendants' actions in conspiracy
with the UK Defendants constitutes fraudulent business practices in violation of N.Y. Gen. Bus. L
§ 349, for their abuse of their positions as attorneys to further their scheme to defraud, which
caused injury to Plaintiff by forcing Plaintiff to take valuable time away from its business and
clients to address the Defendants' false claims of infringement, as well as to be subjected to the
Higbee Defendants' non-stop harassment. *See id* ¶ 45; *see also id* ¶ 22–43.

On June 7, 2018, Plaintiff filed this action against the Defendants. On June 29, 2018, the
Higbee Defendants filed their 12(b)(6) Motion.  The Motion includes, and relies on, claimed
factual assertions outside the Complaint and that were not within Plaintiff's knowledge nor on
which Plaintiff relied in its Complaint. *See* The Higbee Defendants' Memorandum in Support of

Motion to Dismiss under FRCP 12(b)(6) ("DE 9-1") at 2–3 (discussing the alleged relationship of the UK Defendants, and Defendant RM Media's business practices and media library); DE 9-1 at 19 (concluding that Plaintiff engaged in "specific infringing conduct unique to Plaintiff" with no basis). The Motion also includes, and relies on, blatantly false information, of which the Higbee Defendants know to be false. DE 9-1 at 3 (falsely stating higher purchase price for images, including the Image, and a different reason for such purchase); DE 9-1 at 5 (discussing the relationship between all Defendants); DE 9-1 at 10 (claiming that the attribution requested was to credit the "*owner* of the Copyrighted Work"); DE 9-1 at 20 (claiming that the license terms are stated on the Website); *e.g.*, DE 9-1 at 12 (claiming that the attribution was an "express condition[] to obtaining a license."). Finally, the Motion relies on a series of claimed "admissions" that Plaintiff never made. DE 9-1 at 8 (that "Plaintiff acknowledges, the Higbee Defendants do not own any interest in the Copyrighted Work"); DE 9-1 at 16 (that Plaintiff admitted to a failure to read or understand the license); DE 9-1 at 20 (that the Higbee Defendants have no relationship to the Image and Plaintiff "recognize[s] such"). Moreover, the Higbee Defendants fail to offer a declaration of anyone to lay the required evidentiary foundation for any of these extraneous "factual" assertions they make solely in a memorandum of law in support of the Motion. The Motion is also riddled with arguments that are confused and/or severely misrepresent case law, rendering them meritless. For these reasons, the Higbee Defendants' Motion must be denied.

## ARGUMENT

### I.

### THE FACTUAL ALLEGATIONS THAT ARE OUTSIDE THE SCOPE OF PLAINTIFF'S COMPLAINT, WHICH THE HIGBEE DEFENDANTS HEAVILY RELY UPON, SHOULD NOT BE CONSIDERED ON THIS MOTION

On a motion to dismiss a complaint for failure to state a claim under FRCP 12(b)(6), the only facts to be considered are those alleged in the complaint. *Doe v. Columbia University*, 831

F.3d 46, 48 (2d Cir. 2016) (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110–11 (2d Cir. 2010)); *Reed v. Garden City Union Free School Dist.*, 987 F.Supp.2d 260, 263 (EDNY 2013). A court must accept such facts as true and draw all reasonable inferences in favor of Plaintiff. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This makes it very "difficult to resolve [certain questions] as a matter of law." *Twombly v. Bell Atl. Corp.*, 313 F.Supp.2d 174, 179 (SDNY 2003), *reversed and remanded for other reasons by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), (quoting *In re Independent Energy Holdings PLC*, 154 F.Supp.2d 741, 748 (SDNY 2001)). For a complaint to "be enough to raise a right to relief above the speculative level," a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 555, 570. "Needless to say, . . . a court at this stage of our proceeding is not engaged in an effort to determine the true facts. The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim." *Columbia University*, 831 F.3d at 48.

"Generally, when a defendant attempts to counter a plaintiff's Complaint with its own factual allegations and exhibits, such allegations and exhibits are inappropriate for consideration by this Court at the motion to dismiss stage." *Oxman v. Downs*, 999 F.Supp.2d 404, 407 (EDNY 2014) (Spatt, J.) (citing *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F.Supp.2d 569, 572 (SDNY 2013) ("Defendants dispute many of the complaint's factual allegations, which the court cannot adjudicate at the motion to dismiss stage.")). When a defendant alleges facts that are "found to be outside the pleadings, the Court may either exclude the additional material or convert the motion to a summary judgment motion under FED. R. CIV. P. 56, and provide both parties the chance to present additional support." *E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, No. 2:17-cv-01034, 2017 WL 4162309, at *5 (EDNY Sept. 19, 2017) (Spatt, J.) (citing *Fonte v. Bd. Of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988). Conversion of a motion to

dismiss, though, is unwarranted where the plaintiff has no "knowledge or possession of the [defendant's extraneous facts and did not rely on them] in framing the complaint." *Hoy v. Inc. Village of Bayville*, 765 F.Supp.2d 158 (EDNY 2011).

The Higbee Defendants' Motion offers and relies on claimed "facts" neither included nor addressed by reference in the Complaint, and not on which Plaintiff relied in framing its Complaint. *See* above at 6; *see also* DE 9-1 at 2–3, 19. Also, the Motion includes and relies on false statements of fact, as well as "admissions" by Plaintiff that were never made. *See* above at 6–7; *see also* DE 9-1 at 3, 5, 10, 12–13, 20; DE 9-1 at 8, 16, 20. There is no evidentiary foundation for any of the extraneous factual matters that the Higbee Defendants introduce, as they offer no statements, supporting affidavits, or declarations from appropriate witnesses with personal knowledge of the alleged "facts." Accordingly, a conversion of the Motion is unwarranted here, and all of the extraneous "facts" must be excluded from consideration. Further, as discussed below, the Motion should be denied outright because Plaintiff's Complaint sufficiently alleges the relevant facts to state its claims.

## II.

### NOT ONLY IS THE HIGBEE DEFENDANTS' MOTION DEFECTIVE, BUT ALL OF THEIR CONTENTIONS ARE MERITLESS

#### A.    There is No Copyright Infringement Here

"It is well settled that state law rules of contract construction govern the interpretation of copyright transfer agreements, notwithstanding the federal statutory source of the rights at issue." *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 412 (2d Cir. 2018) (citing *Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998). When a work is subject to a license, the law does not entertain claims under the Copyright Act, as an "award of copyright damages in [any case involving a license] is problematic[ because a] copyright owner who grants a nonexclusive license to use his

copyrighted material waives his right to sue the licensee for copyright infringement." *See Graham*, 144 F.3d at 236 (citing *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753 (11th Cir. 1997); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1338–39 (9th Cir. 1990)); *see also United States Naval Inst. v. Charter Communications, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991) (for the proposition that though a licensee "is capable of breaching the contractual obligations imposed on it by the license, [it] cannot be liable for infringing the copyright rights conveyed to it.").

      With respect to claims of breach of a nonexclusive license that has no duration and grants broad, unrestricted rights to use a copyrighted work, the license (1) is not terminable at will by the licensor; (2) must be materially and willfully breached by the licensee in order to give rise to the licensor's right of rescission; and (3) must be expressly and formally rescinded before any use by the licensee can be deemed not subject to the license and thereby, considered copyright infringing use. *Graham*, 144 F.3d at 236–38; *see also TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 93 (2d Cir. 2005); *Rano v. Sipa Press, Inc.*, 987 F.2d 580 (9th Cir. 1993). Furthermore, failure to attribute credit to the author is not a material breach such that a licensor may rescind a license because such obligations are considered covenants, not conditions. *See Graham*, 144 F.3d at 237 (citing *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985); *Jacob Maxwell, Inc.*, 110 F.3d at 754; *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 778 (7th Cir. 1996). Also, failure to attribute credit, alone, is not copyright infringement. *Graham*, 144 F.3d at 237.

      Based upon the above straightforward law, Plaintiff has stated a claim for the declaratory judgment sought.

      The Higbee Defendants also knew that they were engaging in fraudulent and deceptive business practices, a violation of N.Y. Gen. Bus. L. § 349. The Higbee Defendants knew that their claims of copyright infringement were manifestly false. They also knew that their claim of exposure to over $150,000 in statutory damages was false, but nonetheless, attempted to capitalize

on their victims' fear of liability. They simply never expected any particular victim to discover the spuriousness of their claims and threats, nor to adequately and steadfastly defend themselves. Now, they have pieced together their Motion, which is filled with inaccurate propositions based on inapposite legal support, in an attempt to shield themselves from liability for their role in a vast extortion scheme to defraud countless victims out of thousands of dollars, including their attempt on Plaintiff.

**B.      The Higbee Defendants' Contention That There is No Controversy is Meritless, as They Materially Misrepresent the Case Law**

To avoid what they know is a true legal controversy as alleged in the Complaint, the Higbee Defendants falsely contend that New York courts have already found Plaintiff to have infringed as a matter of law. *See generally* DE 9-1. More specifically, they claim that "Plaintiff committed copyright infringement as a matter of law by failing to meet an express condition (attribution) of the license on which it relies for its use of the Copyrighted Work." *Id.* at 12–13. This position is meritless. The Higbee Defendants have not cited case law indicating that failure to include attribution upon request constitutes willful copyright infringement or a condition to the license. In fact, the law is the exact opposite. The Higbee Defendants' wholly inaccurate position is crafted through a series of half-truths, and their reliance on the cases they cite is entirely misplaced.

The Higbee Defendants cite to *Philpot v. Music Times LLC*, 16-cv-1277, 2017 WL 9538900, *1 (SDNY Mar. 29, 2017) (report and recommendation), *adopted by Philpot v. Music Times LLC*, 2017 WL 1906902, *1 (SDNY May 9, 2017) for the propositions that the Southern District of New York (1) "addressed whether the defendant's failure to include the requisite attribution gave rise to a claim of copyright infringement," and (2) concluded that "[n]early identical conduct [to that of Plaintiff in this case] has previously given rise to a finding of willful copyright infringement." *Philpot* does not support any of the Higbee Defendants' assertions.

11

First, *Philpot* was only before the court for recommendation on the damages to be awarded to the plaintiff because the defendant defaulted. *See id.*; *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (noting that, where a defendant has defaulted, the well-pleaded allegations of the complaint are deemed to be true)"). Thus, the "default judgment entered on well-pleaded allegations in [the] complaint establish[d the] defendant's liability," not the court's adjudication of the facts alleged. *See Philpot*, 2017 WL 9538900, at *4 (quoting *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). The Higbee Defendants conveniently do not mention this crucial backdrop of the decision because it undermines their argument that there is "willful infringement" by Plaintiff here, even though Plaintiff did not default and adamantly refutes any claim that it is an infringer.

Second, the Higbee Defendants' Motion omits material distinguishing factors that make *Philpot* clearly inapposite here. In *Philpot*, the photographs of major music celebrities actually had value and were placed on a recognized third-party forum (Wikipedia). *Id.* at *2. The page hosting each photograph included the pertinent terms of the license and ***expressly stated that attribution was a "condition." Id.*** And, "before copying any photographs, would-be licensees would receive a 'pop-up' that would 'stop[ ] them, making it clear that they must first agree to, and follow, the exact attribution specifications of the [licensor].'" *Id.*

Also, the photographs' metadata—the collection of codes that describe each photograph and operate behind the scenes—originally included the attribution. *Id.* In order for the defendant to use them without attribution, the defendant needed to "wipe them of all metadata, and reproduce and distribute the [then] wiped Copyrighted Photographs without attribution or with [only] a 'Wikipedia Commons' attribution." *Id.* On those facts, the *Philpot* court found "that a 'potential licensee would have to go out of its way to avoid complying' with that system." *See id.* Then, "[e]ven after [the d]efendant was put on notice that it had no license or authority, [the d]efendant

12

elected to continue to reproduce and display and/or distribute [the p]laintiff's Copyrighted Photographs." *Id.*

None of those facts exists here. The Image here was a generic depiction of a tablet bearing listed words and focusing on the user's searched term in Google. Despite the Higbee Defendants' claim of the "unique" nature of his work, Defendant Youngson has reproduced this very image for hundreds of terms and phrases. *See* Schlosser Decl. Ex. 2. The Higbee Defendants' claim that the Image was available for purchase at a price of $250 is similarly false, as the Website stated that a larger size of the Image could be purchased "for a few dollars" ($9.95 to be exact) and directed users to another website (Alpha Images) if they wanted a different size (different than the Image used by Plaintiff which was available for free). *See* Compl. Ex. 1; *see also* Schlosser Decl. Ex. 3.

Also unlike in *Philpot*, here, the actual webpage hosting the Image did not include any terms of the license nor did it expressly state that attribution was a condition precedent to obtaining a license. After finding the Image on the one webpage where it was offered for free under license, the user would have to go to another third-party website for additional language that is contained simply in a "form" of license, but significantly the user is not prevented access to the attribution-free Image should it fail to go "out of its way" to find terms in that form of license. Evidence of this critical distinction can, now, be found right on the Website. Significantly, it has been discovered that within the last 30 days, the Website has been altered to state that "attribution is a condition of the license," as well as additional statements to that effect. *Compare* Compl. Ex. 1 *with* Schlosser Decl. Ex. 3.

More importantly, the Image here did not include the desired attribution within its metadata nor was it protected by any pop-up notices. In fact, the Image could be copied directly from a Google search thumbnail without ever accessing the Website. This has also been recently changed, as the Image is no longer readily available through a Google search. *See* Schlosser Decl. Ex. 4–5.

13

Finally, here, the Plaintiff ceased use of the Image immediately after it was notified by the Higbee Defendants of a dispute concerning its use. "A copyright holder seeking to prove that a copier's infringement was willful must show that the infringer 'had knowledge that its conduct represented infringement or ... recklessly disregarded the possibility.'" *Philpot*, 2017 WL 9538900, at \*5 (quoting *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir. 1993)). "Courts will infer willful infringement from the fact that a defendant engages in infringing activity after receiving warning that the activity constitutes infringement." *Id.* (citing *EMI Entm't World, Inc. v. Karen Records, Inc.*, 806 F. Supp. 2d 697, 704 (SDNY 2011); *Castle Rock Entm't v. Carol Pub. Grp., Inc.*, 955 F. Supp. 260, 267 (SDNY 1997) (willful infringement found where defendant continued to publish infringing book after receiving actual cease and desist notice from plaintiff)).

Having been counsel in *Philpot*, the Higbee Defendants are fully aware that their representation of *Philpot* is disingenuous. The *Philpot* court did not hold, as the Higbee Defendants inexplicably contend, that a user of a work marketed and made available to the public for free and without restriction of access is an infringer of the author's copyright as a matter of law, where, as here, the Plaintiff innocently pulled the Image from a website and any failure to include attribution credit to a third-party—who was neither the author nor the copyright holder of the Image—as requested was inadvertent. Yet, the Higbee Defendants go even further to suggest that the *Philpot* court held that failure to include attribution is *per se* willful infringement. The truth is that *Philpot* simply, and clearly, does not support the Higbee Defendants' position, and because *Philpot* was decided on default solely upon the plaintiff's contentions and because the facts are utterly distinguishable, *Philpot* does not support the Higbee Defendants' position.

The other decision the Higbee Defendants cite—*Graham v. James*, 144 F.3d 229 (2d Cir. 1998)—entirely supports **Plaintiff's** position. The Higbee Defendants incorrectly claim that *Graham*'s only significance is that "the Second Circuit has indicated, '[i]f the nature of a licensee's

14

violation consists of a failure to satisfy a condition to the license, it follows that the rights dependent upon satisfaction of such condition have not been effectively licensed, and therefore, any use by the licensee is without authority from the licensor and may therefore, constitute an infringement of copyright.'" DE 9-1 (quoting *Graham*, 144 F.3d at 237). A simple review of *Graham* indicates why it actually supports Plaintiff's case.

*Graham* is an influential case on the interplay between conflicting copyright and contract laws. *See generally Graham*, 144 F.3d at 229. Applicable here, the Second Circuit issued four important rulings. *See id.* at 236–38. First, the court confirmed that there is no copyright infringement without a finding first that the licensing agreement had been explicitly rescinded. *Id.* at 236. Second, the court stated that a failure to credit authorship is not, on its own, copyright infringement. *Id.* Citing *Nimmer on Copyright*, the court noted that:

> The generally prevailing view in this country under copyright law has been that an author who sells or licenses her work does not have an inherent right to be credited as author of the work. [citation] In line with that general rule, it has been held not to infringe an author's copyright for one who is licensed to reproduce the work to omit the author's name.

*Id.* (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8D.03(A)(1), at 8D-32 (6th ed. 1978)) (citation omitted).

Third, the court held that "the payment of royalties and the inclusion of a notice crediting [] authorship are to be considered covenants, not conditions." *Id.* at 237 (citing *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985) ("In the absence of more compelling evidence that the parties intended to create a condition, the negotiation provision must be construed as a promise or covenant.")). There, the parties had actually reached an oral agreement, but it "did not clearly delineate its conditions and covenants." *Id.* Notably, the *Graham* court found it "important that [the defendant had already] turned over the [work] for use before any royalties were paid," when it concluded that such obligation was a covenant. *Id.* (citing *Jacob Maxwell,*

15

*Inc.*, 110 F.3d at 754 (holding that payment of royalties and attribution were covenants because "[the composer] expressly granted [the licensee] permission to play the song before payment was tendered or recognition received"); *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 778 (7th Cir. 1996) (holding that full payment was not a condition because the licensee received the copyrighted drawings after tendering only half the required payment)).

Finally, the *Graham* court held that "[a] material breach of a covenant will allow the licensor to rescind the license and hold the licensee liable for infringement *for uses of the work thereafter.*" *Id.* (emphasis added) (citing *Rano*, 987 F.2d at 586 ("[A] material breach of a licensing agreement gives rise to a right of rescission which allows the nonbreaching party to terminate the agreement."); *Costello Publ'g Co. v. Rotelle*, 670 F.2d 1035, 1045 (DC Cir. 1981) ("[E]ven if the counterclaims asserted merely constitute a breach of contract, an action for copyright infringement would lie if the breach is so material that it allows the grantor [of] power to recapture the rights granted so that *any further use* of the work was without authority.") (emphasis added)). However, the court concluded that only breaches that are "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract" will warrant rescission. *Id.* (quoting *Septembertide Publ'g, B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989) (internal quotations and citation omitted)).

The Second Circuit has since confirmed *Graham*'s final holding. *See TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 93 (2d Cir. 2005). In *TVT*, the court reversed the District Court's ruling because it "mistakenly concluded that [a] fraudulently induced copyright license is invalid *ipso facto*" and allowed a copyright infringement claim to proceed. *Id.* (internal quotations omitted). The Second Circuit found that "[the] conclusion overlooks the fact that the license must formally be rescinded before an infringement action based on fraudulent inducement of a copyright license can proceed." *Id.* (citing *Graham*, 144 F.3d at 237–38) ("A material breach of a covenant

16

will allow the licensor to rescind the license and hold the licensee liable for infringement for uses of the work thereafter," but "rescission [does] not occur automatically ...."); *see also Jacob Maxwell*, 110 F.3d at 753 ("One party's breach does not automatically cause rescission of a bilateral contract"); *Rano*, 987 F.2d at 586 ("[U]nder federal and state law a material breach of a licensing agreement gives rise to a right of rescission which allows the nonbreaching party to terminate the agreement. *After the agreement is terminated, any further distribution* would constitute copyright infringement.")(emphasis added); 3 *Nimmer on Copyright, supra*, § 10.15 [A] ("Failing such rescission, . . . the grant [of license] continues in place, thus precluding infringement liability until such time as the copyright owner exercises his entitlement to rescind.").

The *Graham* court was comprehensive and clear in its decision, and each of the abovementioned holdings apply in this case, making it clear that the UK Defendants never had any claim of copyright infringement against Plaintiff. First, there was no rescission in this case. *See Rano*, 987 F.2d at 585–86 (for the proposition that Demand I was not an effective rescission because the license had no duration, and thus, section 203 of the Copyright Act only allows for termination of any such agreement within a specific five year period). In any event, after Plaintiff received Demand I, it stopped using the Image, and thus, there was never any *infringing* use.

Second, any failure to attribute, alone, is not copyright infringement. Third, absent express agreement to the contrary, attribution requirements are merely covenants. This is even more true here where, similar to *Graham*, Plaintiff had unfettered access to the Image without needing to first provide attribution—or, unlike in *Philpot*, no pop-up notice alerted Plaintiff of the license nor required acceptance of the express condition prior to accessing the Image.

Lastly, any failure to include the requested attribution was innocent and immaterial, causing the UK Defendants no damage. The standard of materiality articulated in *Graham* is high and such trivial conduct, as here, does not rise to the level of permitting rescission. It can hardly

17

be said that not including the attribution "strongly tend[ed] to defeat the object of" sharing Defendant Youngson's mass-produced images. *See Graham*, 144 F.3d at 237. This is especially so here, where the attribution requested was that of a third-party.

The foregoing shows that the Higbee Defendants have woefully failed to establish that Plaintiff has not alleged a plausible claim for a judicial declaration regarding Defendants' alleged claim of copyright infringement and statutory damages that form the basis of Defendants' extortionate demands for monetary payments.

**C.     The Higbee Defendants Were a Part of a Larger Deceptive Scheme That is Consumer-Oriented, and Caused Direct Injury to Plaintiff Under N.Y. Gen. Bus. L. § 349.**

To successfully assert a claim under N.Y. Gen. Bus. L. § 349(h), "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *North State Autobahn, Inc. v. Progressive Ins. Group Co.*, 102 A.D.3d 5, 11 (2d Dep't 2012) (quoting *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009)); citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)). The Higbee Defendants attempt to claim that the license created a private transaction between Plaintiff and the UK Defendants, and thus, was not consumer-oriented. The Higbee Defendants likewise contend that Plaintiff suffered no injury because it did not submit to the fraudulent demands and harassment. Nearly identical arguments were made in *North State*, *supra*, and the Second Department rejected both.

### 1.     Consumer-Oriented Scheme

"[C]onduct has been held to be sufficiently consumer-oriented to satisfy the statute . . . where it constituted a standard or routine practice that was 'consumer-oriented in the sense that [it] potentially affect[ed] similarly situated consumers.'" *Id.* at 12 (quoting *Oswego Laborers'*

18

*Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 27 (1995); *see also Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 164 (2d Dep't 2010); *Elacqua v. Physicians' Reciprocal Ins.*, 52 A.D.3d 886, 888 (3d Dep't 2009). In other words, "[the] defendant's acts or practices must have a broad impact on consumers at large." *North State*, 102 A.D.3d at 12 (quoting *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320 (1995) (internal quotations omitted); *see also Oswego Laborers'*, 85 N.Y.2d at 25; *Canario v. Gunn*, 300 A.D.2d 332, 333 (2d Dep't 2002); *Genesco Ent., Div. of Lymutt Indus., Inc. v. Koch*, 593 F.Supp. 743, 752 (SDNY 1984).

In *North State*, the defendants, Progressive insurance company and its employees, misled claimants insured by Progressive into believing that they were required to have their vehicles serviced at specific repair shops. *Id.* at 13. "The complaint further allege[d] that this conduct . . . constituted a standard practice that was routinely applied to all claimants[.]" *Id.* The Second Department concluded that such allegations sufficiently complained-of conduct that was consumer-oriented under NYGBL § 349.

Here, the Website is one of many others set up by the Defendants to promote their multi-step scheme that begins with the marketing of "free images for [a user's] website." *See* DE 9-1 at 2; *See also, e.g.*, Schlosser Decl. Ex. 1, at Compl. ¶ 19. Users of the UK Defendants' websites are, without doubt, consumers in the market for images, and more specifically, as here, for free images to use on their websites. Unbeknownst to such consumers, the Higbee Defendants, despite knowing that there is no copyright infringement, wait in the wings for the opportunity to send threatening demand letters containing the intimidating ultimatum to pay thousands of dollars or be sued and face possible liability for over $150,000. Then, they follow up with consistent, harassing and disturbing emails and phone calls. Plaintiff was one such consumer when it acquired the Image, and a victim of the Defendants' scheme. The Higbee Defendants' contention that their role in the scheme does not constitute consumer-oriented conduct under N.Y. Gen. Bus. Law § 349

misses the point by focusing only on the existence of the licenses. Plaintiff's Complaint clearly details the elaborate, deceptive scheme used by Defendants to extort money from users of the UK Defendants' convoluted websites.

Additionally, the Higbee Defendants' assertion that either license created only a private contractual dispute fails. While "[p]rivate contract disputes, *unique to the parties* ... [do] not fall within the ambit of the statute," *North State*, 102 A.D.3d at 12 (quoting *Oswego Laborers'*, 85 N.Y.2d at 25) (emphasis added), neither license is "tailored to meet the purchaser's wishes and requirements." *See id.* (quoting *New York Univ.*, 87 N.Y.2d at 321 (internal quotations omitted)). Also, the separate license on the other webpage relied upon by the Higbee Defendants did not even state the names of the parties, but merely provided that the agreement was between the defined terms "Licensor" and "You." *See* Schlosser Decl. Ex. 1, at Ex. 1 to Compl. pg. 6–7. The generic, one-size-fits-all nature of that license is further evidence that it is targeted to the public at large, not specific to any party—not even the UK Defendants. This is similar to *North State* in that, there, the claimants were not singled out for receipt of the false information, nor was the information individually-tailored to each claimant.

### 2.   Injury to Plaintiff

N.Y. Gen. Bus. L. § 349(h) provides that "any person who has been injured . . . may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. L.  § 349(h). Though there is no support for their position, the Higbee Defendants incorrectly contend that the injury-causation requirement creates a burden on Plaintiff to show detrimental reliance. They cite to outdated case law for the proposition that "[s]ection 349 mandates a showing that plaintiff's injury be a result of reliance on a materially deceptive act or practice." *See* DE 9-1 at 15. However, "the Court of Appeals of New York has cautioned courts against conflating 'reliance' and

'causation' with regard to section 349 claims." *Dash v. Seagate Technology (US) Holdings, Inc.*, No. 13-cv-63292015, 2015 WL 11973674, at *18 (EDNY September 1, 2015) (quoting *Stutman*, 95 N.Y.2d 24, 30 (2000)).

"[A] plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm." *Stutman*, 95 N.Y.2d at 29 (citations omitted). "Further, [the NY Court of Appeals has] repeatedly stated, reliance is not an element of a section 349 claim." *Id.* at 29 (citing *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999) ("Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim"); *Oswego Laborers'*, 85 N.Y.2d at 26 ("the statute does not require proof of justifiable reliance")). "In order to satisfy the causation requirement, a Section 349 plaintiff need only show that he or she sustained a loss 'because of defendant['s] act.'" *Dash*, 2015 WL 11973674, at *18 (quoting *Stutman*, 95 N.Y.2d at 30).

In *Stutman*, the defendant bank informed plaintiffs that there would be no prepayment penalty on plaintiffs' loan. *Stutman*, 95 N.Y.2d at 29. However, when plaintiffs sought to refinance their loan, they were assessed an "attorney's fee." *Id.* The plaintiffs alleged "that the note was deceptive for not revealing that fee." *Id.* The Court of Appeals overruled the First Department, discussing the lower court's error as follows:

> The Appellate Division dismissed plaintiffs' claim, holding that they failed to show justifiable reliance: that is, that the note's failure to disclose the $275 attorney's fee "had any effect on plaintiffs' decision to borrow from defendant in the first place." That, however, was the wrong standard, because reliance is not an element of a section 349 claim.

*Id.* at 30.

Here, as the Higbee Defendants repeatedly point out, Plaintiff is a law firm. As such, Plaintiff had the resources to independently assess Defendants' claim of infringement and avoid unjustly enriching the Defendants; other victims were likely not as fortunate. In any event, that time spent assessing the validity of the Defendants' false claims of copyright, responding to the

21

Higbee Defendants, and being subsequently harassed by the Higbee Defendants, was valuable time Plaintiff did not spend tending to any number of important matters nor assisting Plaintiff's numerous clients.

Thus, contrary to the Higbee Defendants' contention, Plaintiff does not need to allege that it actually paid the extortionate fee requested in reliance on the false claims of copyright infringement. The Plaintiff was required to take valuable time away from its business and expend resources to assess the Defendant's claim. Such is injury sufficient to state a N.Y. Gen. Bus. L. § 349 claim.

   **3.**  **The Higbee Defendants misconstrue the Plaintiff's Complaint**

The Higbee Defendants' second contention is a bit baffling. They (incorrectly) assert that "Plaintiff[ ]admittedly failed to read the express license terms," and that such "failure to read material containing allegedly deceptive representations or an alleged failure to understand the content is insufficient to state a § 349 claim". *See* DE 9-1 at 16. However, Plaintiff has not alleged that the language of the additional license on the third-party web page is, itself, deceptive. The Higbee Defendants therefore, again, miss the point entirely in citing *Goldman Stone Trading, Inc. v. Wayne Electro Systems, Inc.,* 67 A.D.3d 731, 732 (2d Dep't 2009) for the well-known proposition that "[a] party who executes a contract is presumed to know its contents and to assent to them and an inability to understand the English language, without more, is insufficient to avoid this general rule."

Ironically, the Higbee Defendants continue to emphasize the contractual relationship created by the third-party license to support this argument, and others, with respect to Plaintiff's N.Y. Gen. Bus. L. § 349 claim. This directly contradicts their initial position that Plaintiff never obtained a license to use the Image. Nonetheless, their argument shows a lack of understanding of the allegations against them. Plaintiff does not allege that a failure to read the license on the other

22

webpage gives rise to a deceptive business practice claim against the Defendants. Plaintiff also does not allege that Defendants drafted a license that included "deceptive representations."

Plaintiff's allegations make clear that the Higbee Defendants' are a part of a scheme to defraud users of the UK Defendants' images. In fact, the Higbee Defendants' role in the scheme is, by far, the most offensive. Under the color of legal authority and the threat of costly statutory ramifications, which they knew to be false, the Higbee Defendants sent demand letters to many unsuspecting victims in an attempt to extract thousands of dollars for images that are marketed and made available to the general public *for free*.

One such targeted victim was Plaintiff, but it did not simply cower and pay the extortionate fees. Plaintiff asked the Higbee Defendants for clarification and further information to support their claim for copyright infringement; without such, Plaintiff maintained that it did not so infringe. *See* Ex. 1, Compl. ¶ 36. The Higbee Defendants, however, did not—because they could not—respond with law supportive of their claim. Instead, they began a barrage of harassing communications. *Id.* ¶ 35–44. This scam has also been well documented on the Internet. *See, e.g*, Matthew Chan, *Higbee Associates Letter & Lawsuits Forum*, The ELI Forums (a forum tracking and "reporting of Extortion Settlement Demand Letters"), available at *https://www.extortionletterinfo.com/forum/higbee-letter-lawsuits-forum/photog-nick-youngson-(higbee-assoc-)-lists-rm-media-ltd-in-template-lawsuit/* (last visited on July 11, 2018).

The Higbee Defendants have been properly identified in this suit for their role in a fraudulent scheme. For the same reason, their opining that they hold no copyright interest in the Image, and thus, are improper defendants, is likewise unavailing.

**D.      The Higbee Defendants' Claim of Immunity is Unsupported by Law as There is No Absolute Privilege in NY, and Qualified Privilege does not Protect Threats of Baseless Litigation.**

The Higbee Defendants again cite to outdated cases to claim that their demand letters falsely claiming copyright infringement are protected by absolute privilege. For example, *Vodopia v. Ziff-Davis Publ. Co.*, 243 A.D.2d 368 (1st Dep't 1997), concerned a "[p]laintiff's defamation cause of action, premised upon contents of [a] letter written by opposing counsel[.]" *Id.* There, the First Department held that the lower court "properly dismissed . . . [on the] ground that letter was absolutely privileged[.]" *Id.* The Higbee Defendants cite to *Vodopia*, among others, for the proposition that "absolute privilege applied to 'a letter written . . . during the course of negotiations to settle a copyright lawsuit threatened by plaintiff's client.'" *See* DE 9-1 at 20 (quoting *Vodopia*, 243 A.D.2d at 368).

*Vodopia*, and all cases holding the same, were abrogated by *Front, Inc. v. Khalil*, 24 N.Y.3d 713 (2015). *Front Inc.* addressed the confusion amongst the First, Second, and Third Departments. *Id.* There, the Court of Appeals held:

> To ensure that such communications are afforded sufficient protection the *privilege should be qualified*. Rather than applying the general malice standard to this pre-litigation stage, the privilege should *only be applied to statements pertinent to a good faith anticipated litigation*. This requirement ensures that ***privilege does not protect attorneys who are seeking to bully, harass, or intimidate their client's adversaries by threatening baseless litigation or by asserting wholly unmeritorious claims, unsupported in law and fact, in violation of counsel's ethical obligations.*** Therefore, we hold that statements made prior to the commencement of an anticipated litigation are privileged, and that the privilege is lost where a [it is proven] that the statements were not pertinent to a good faith anticipated litigation.

*Id.* at 720 (emphasis added).

There is no absolute privilege for pre-litigation demand letters, and the qualified privilege clearly does not apply here. Plaintiff is suing the Higbee Defendants for their role in a fraudulent scheme. Plaintiff's Complaint sufficiently alleged that the Higbee Defendants colluded with the

24

UK Defendants in an attempt to extort money from their victims, including Plaintiff. More specifically, the Higbee Defendants used their positions as copyright attorneys to threaten litigation and heightened statutory liability of $150,000, knowing that no claim of copyright infringement, especially not willful infringement, existed. The communications were a part of a larger scheme to defraud, "bully, harass, [and] intimidate" users of the UK Defendants' images, including Plaintiff, and as such, the Higbee Defendants do not qualify for the protection of the privilege.

## CONCLUSION

Plaintiff's Complaint sufficiently alleges facts to state its claims for declaratory judgment that Plaintiff's *de minimis* use of the Image does not constitute copyright infringement and that it is not liable for breach of the license because the Defendants can show no damage. Likewise, Plaintiff's Complaint sufficiently alleges facts to state its claims that the Defendants violated N.Y. Gen. Bus. L. § 349 by engaging in a scheme to deceive Plaintiff, and other consumers, out of thousands of dollars under false claims of willful copyright infringement.

In contrast, the Higbee Defendants have failed to show that Plaintiff's Complaint should be dismissed under FRCP 12(b)(6). Moreover, their Motion relies on extraneous and false facts that may not be considered on such motion, and all of their contentions are meritless. Consequently, their Motion to dismiss should be denied.

Dated:  Garden City, New York
         July 13, 2018

                                      MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
                                      By: ___/s/_____
                                      Kevin Schlosser (kschlosser@msek.com)
                                      Adreama Mackey-Ponte (awaiting admission)
                                      *Attorney for Plaintiff (Pro Se)*
                                      990 Stewart Ave
                                      Garden City, New York 11530
                                      (516) 741-6565

4125849