**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.,

                    **Plaintiff,**

-against-

MATHEW K. HIGBEE, Esq.,
And HIGBEE & ASSOCIATES,

                      **Defendants.**

**Docket No.: 18-cv-3353 (ADS) (ARL)**

**AMENDED COMPLAINT**

---

Plaintiff Meyer, Suozzi, English & Klein, P.C., pro se, complaining of defendants Mathew K. Higbee, Esq., and Higbee & Associates (collectively, the "Defendants"), alleges as follows:

## NATURE OF ACTION

1. Plaintiff brings this action as one of the unsuspecting victims of a fraudulent scheme in which Defendants abuse the copyright laws by conspiring with others in filing copyright registrations over effortless and mundane photographs, making the photos freely available on the Internet for no charge so that Defendants can thereby catch innocent people unwittingly using the photos without an "attribution" that is requested on a purposefully deceitful website where the photos are offered under "license," and then, by using harassing scare tactics to extract money from their victims to "settle" purported copyright claims with the specter of statutory damages of up to $150,000, which Defendants know fully are not recoverable.

2. Thus, upon information and belief, Defendants have conspired with others to orchestrate their fraudulent scheme knowingly and intentionally through the following deceptive tactics, among others:

    a. An individual who reportedly lives in England takes photographs of common text printing.

b. A copyright registration is filed with the United States Copyright Office for the subject photos.

c. The photos are then made available on the Internet, and easily found through the use of common search terms of the text in the photos, for anyone to copy the photos and use such in whatever manner and for whatever purpose they wish, including for commercial use.

d. On the website page where the photo is found, no charge or any fee is requested for use of the photo as it appears, as Defendants know that no one would actually pay any meaningful money for such mundane photos, yet Defendants have used this scheme to extract thousands of dollars from unsuspecting victims as further described herein.

e. The website page from which the photos can be easily copied states that the user of the photo has a "license" to use the photo.

f. The user of the photo is not required to sign anything or confirm agreement to any terms of use before gaining access to the photo.

g. In their pursuit of catching innocent victims, Defendants then troll the Internet by using precise search criteria tied to the photos so that they can easily monitor who has used the photos on the Internet.

h. Once Defendants identify someone who has used the photo(s) and unwittingly failed to include the "attribution" that is requested, Defendants launch their extortionate tactics to harass, intimidate and scare the user into paying thousands of dollars by asserting demonstrably false claims of copyright infringement and damages that could not possibly be recovered.

i. Although, on the website page in which the photos appear, a party called "Blue Diamond Gallery" is purportedly making the photos available, Defendants do not purport to assert claims on behalf of "Blue Diamond Gallery" or the individual who filed the actual copyright registration, or the entity for which an attribution is requested. (On the website where the photo appears, there is no explanation of who or what "Blue Diamond Gallery" is or what connection it has to the photos or any copyrights.)

j. As part of their extortionate tactics, Defendants send threatening letters to the unsuspecting victims demanding thousands of dollars to "settle," falsely claiming that the use of the photo constitutes copyright infringement and thereby exposes the user to statutory damages of up to $150,000.

k. In demanding amounts to "settle" based upon purported statutory copyright damages, Defendants falsely claim that the use of the photo was without a license – directly contrary to the page where the photo was made available.

l. Defendants' demand letters also do not provide any factual basis under which damages of up to $150,000 would ever be awarded.

m. Defendants know that referring to $150,000 in damages is misleading and deceptive and intended to intimidate the recipient.

n. In fact, contrary to the assertions in the demand letters, there is no copyright infringement under the circumstances because the photos are freely made available to the user under a "license," which thereby precludes a claim for copyright infringement and simply renders the use subject to a mere alleged claim of breach of the "license," for which no such "statutory damages" are available and for which no actual damages

can be proved, certainly not the thousands of dollars deceptively demanded by Defendants.

o. Defendants then continue their harassing conduct by repeatedly attempting to extract some form of "settlement" money from their victims, including threatening suit, or in some instances, bringing suit and then quickly settling and/or dismissing such suits.

p. Defendants threatened the Plaintiff herein by sending a draft complaint that they claimed they would file in this very Court within a short time if Plaintiff did not pay the extortionate "settlement" amount.

q. In this case, when Plaintiff initially instituted this action and asserted these claims against Defendants and the alleged copyright owners based upon their deceptive acts, as is shown as part of the public record in this lawsuit, the copyright owners remarkably claimed that this Court did not have jurisdiction over them, tried to avoid an adjudication of their purported copyright claims and subsequently released all claims against Plaintiff, including anything related to the bogus "copyright" claims that Defendants used to try to extort the unjustified "settlement" payment, thereby exposing the deceptive and manipulative scheme Defendants perpetrate.

3. As a result of the foregoing, Plaintiff seeks relief, including damages, for Defendants' false, fraudulent and deceptive practices in violation of N.Y. Gen. Bus. L. § 349.

## **PARTIES AND JURISDICTION**

4. Plaintiff is a professional corporation duly organized and authorized to do business in and a citizen of the State of New York, with a place of business at 990 Stewart Avenue, Suite 300, Garden City, New York 11530.

5. Upon information and belief, Defendant Mathew K. Higbee ("Defendant Higbee") is a natural person, and an attorney licensed under the laws of the State of California.

6. Upon information and belief, Defendant Higbee does not reside in nor is a citizen of the State of New York.

7. Upon information and belief, Defendant The Law Firm of Higbee & Associates (the "Defendant Firm") is a law firm with a principal place of business in and formed under the laws of the State of California.

8. Upon information and belief, Defendant Firm is not a citizen of the State of New York.

9. This Court has original subject matter jurisdiction pursuant to Title 28 of the United States Code, Section 1332(a)(1) (diversity jurisdiction) because Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000.

10. This Court has personal jurisdiction over Defendants because they are doing business, and/or transacting business within and directed to New York, and Plaintiff's claims herein arise from those activities.

11. Defendants have waived any objection to personal jurisdiction in this action by appearing in this action, moving to dismiss on other grounds and not objecting to personal jurisdiction herein.

12. At all relevant times hereto, Defendants' acts and practices occurred in and throughout the United States, including in the State of New York.

13. Defendants' wrongful acts and practices, including those upon which the claims herein are based, have crossed into and taken place in the State of New York.

14. The Defendant Firm has at least one attorney who regularly practices in the State of New York and who appears in and is admitted to this Court, including specifically in relation to the claims asserted in this lawsuit.

15. At all times relevant herein, upon information and belief, Defendants have acted in concert with each other, with the knowledge and participation of each other, to commit the wrongful acts alleged herein.

16. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the alleged events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action, is situated in this Judicial District.

## **FACTS**

17. On or about December 26, 2017, Plaintiff published, on one of its blogs, an article (the "Article").

18. To accompany the Article, Plaintiff's marketing personnel used a generic stock photograph (the "Image") from a website page offering "[t]he burden-of-proof *free* pictures for your web site." (Emphasis added.)

19. The Image was "offered" by the Blue Diamond Gallery and hosted on the following website page: http://thebluediamondgallery.com/b/burden-of-proof.html (the "Blue Diamond Website").

20. A copy of the Blue Diamond Website where the Image was "offered" is annexed hereto as Exhibit 1.

21. The Image was offered for use under free license.

22. The Blue Diamond Website states: "Free License permits: Sharing, copying and redistributing in any medium or format including adapting, remixing, transforming, and burden-of-proofing upon the material for any purpose, even commercially. Attribution required."

23. On the Blue Diamond Website where the Image was offered for free use under license, there is no indication that the license had any *conditions* precedent, subsequent or otherwise.

24. On the Blue Diamond Website where the Image was offered for free use under license, the Image is fully accessible, without requiring the user to click anything else or confirm acknowledgement of any terms.

25. Plaintiff's marketing personnel were duped into using the Image by virtue of the deceptive manner in which it was offered for use under license.

26. Plaintiff's marketing personnel would not have used the Image at all had they known of the deceptive scheme that Defendants and those in concert with them used to catch unsuspecting consumers by duping them into using the Image and then being threatened with exorbitant "damages."

27. Upon information and belief, Nick Youngson ("Youngson") is a natural person who resides in the United Kingdom and who claims to be a photographer by trade.

28. Upon information and belief, the copyright registration filed for the Image was filed on behalf of Youngson.

29. Upon information and belief, RM Media, Ltd. ("RM") is a foreign business entity that operates out of the United Kingdom.

30. Upon information and belief, Youngson claims that he assigned the copyright rights over the Image to RM.

31. On February 5, 2018, Plaintiff received a letter from Defendants, dated January 30, 2018 ("Demand I").

32. Immediately upon receiving Demand I, Plaintiff removed the Image from its website and discontinued such use.

33. Plaintiff has received no monetary benefit from the Image.

34. Any failure by Plaintiff's marketing personnel to provide any attribution with the Image was inadvertent, innocent and unintentional.

35. Any failure to provide any attribution with the Image has not resulted in any monetary or other known damage to anyone, including RM, Youngson, or the Defendants.

36. In Demand I, Defendants Higbee and the Defendant Firm claimed to represent RM concerning the Image.

37. In Demand I, Defendants falsely contended that Plaintiff had infringed RM's alleged copyright in the Image and that "[i]f forced to go to court, [Defendants] *will ask* for the maximum relief possible, which may include statutory damages under 17 U.S.C. ¶ [*sic*] 504 for up to $150,000 for intentional infringement or $30,000 for unintentional infringement." (Emphasis added.)

38. In Demand I, Defendants referenced an already-established online collection account associated with Plaintiff to which payments were to be immediately made.

39. In making these allegations against Plaintiff, Defendants did not set forth a good faith basis to believe that Plaintiff's use of the Image constituted copyright infringement.

40. In making these allegations against Plaintiff, Defendants did not set forth a good faith basis to recover $150,000 in damages.

41. In fact, Defendants sent Demand I to Plaintiff knowing that there was no claim of copyright infringement as a matter of law because the Image was offered under license for free including for commercial purposes.

42. Defendants knew that their reference to $150,000 in damages was deceptive and misleading because, among other reasons, there is no copyright infringement where use is pursuant to license and there was no justification for such a level of damages in any event under the circumstances.

43. In Demand I, Defendants attempted to extract a "settlement" from Plaintiff without ever explaining how Defendants arrived upon the amount demanded, what the basis for such amount could be, or any other explanation.

44. Upon information and belief, Defendants sent Demand I to Plaintiff as a means of harassing and intimidating Plaintiff into thinking that it was exposed to such significant damages, even though Defendants knew full well that there was no legal basis for their claim.

45. Though Demand I provides that Plaintiff had thirty (30) days to respond, in furtherance of their intimidation tactics, Defendants sent multiple communications to Plaintiff within that time that were harassing and threatening.

46. On February 13, 2018, Plaintiff responded to Defendants, informing them of the inherent flaws in their claim, the innocent and *de minimis* nature of the use of the Image, that Plaintiff had discontinued use of the Image and considered the matter closed, and requested that Defendants likewise consider the matter closed.

47. Defendants thereafter sent additional emails and repeatedly called Plaintiff to extract money from Plaintiff, by falsely claiming copyright infringement and demanding thousands of dollars.

48. Defendants then sent an escalated communication dated May 9, 2018, which Plaintiff received on *May 22, 2018*, which included a purported draft of a civil complaint ("Demand II").

49. A copy of Demand II with the enclosed threatened complaint is annexed hereto and incorporated herein as Exhibit 2.

50. The draft complaint that Defendants threatened to bring against Plaintiff named RM as the plaintiff, referring to it as "a natural person and is a professional photographer by trade."

51. The draft complaint that Defendants threatened to bring against Plaintiff described the plaintiff RM alleged therein as an individual not an entity:

> Plaintiff is a well-known professional photographer. He sells or licenses photographs to people and companies seeking to make use of the photographs for advertisements and pecuniary gain. Plaintiffs livelihood is dependent on receiving compensation for the photographs he produces.
>
> Plaintiff has registered the Image(s) with the United States Copyright Office under registration number(s) Vau 1-248-878 … .

52. In Demand II, Defendants falsely claimed again that Plaintiff "engaged in copyright infringement when it posted [the] client's copyrighted image on its website without a valid licensing agreement."

53. The draft complaint accompanying Demand II alleged that this Court had jurisdiction over Plaintiff and RM, and that venue in this Court was proper to adjudicate RM's alleged copyright claims.

54. Like the false assertions in the Demand II letter, the draft complaint also falsely claimed that Plaintiff supposedly used the Imagine *without any license*.

55. However, Defendants were fully aware that the Image was made available by license.

56. In Demand II, Defendants again claimed that they would be "entitled to recover Statutory damages of up to $150,000 for each infringement and may also recover attorney fees and court costs. *See* 17 U.S.C. §§ 504 & 505."

57. Demand II stated that the "offer will be open for fifteen (15) days from the date of [the] letter, after which our client has instructed us to file the enclosed Complaint and seek damages to the full extent of the law."

58. In making these allegations against Plaintiff, Defendants falsely asserted that they would institute litigation in this Court against Plaintiff, when in fact neither they nor their clients intended to do so.

59. Upon information and belief, Defendants falsely and strategically claimed entitlement to the maximum statutory damages, emphasized the fees and costs recoverable, and marked Demand II with a period of urgency, to further pressure, intimidate, and frighten Plaintiff into immediately paying the requested settlement amount.

60. Defendants' assertions in Demand I and Demand II of copyright infringement are false and deceptive for various reasons, including, but not limited to, the fact that the Image was "offered" expressly under license, and thus, Plaintiff had a license and did not infringe the copyright as a matter of law.

61. Defendants' assertions in Demand I and Demand II are false and deceptive in that there is no basis for $150,000 in damages under the circumstances of Plaintiff's *de minimis* and innocent use, without any actual damage to anyone, and Plaintiff's immediate discontinuance of such use.

62. Plaintiff initially instituted this action in June 2018, naming Defendants and RM and Youngson as defendants.

63. RM and Youngson defaulted and then claimed that this Court did not have jurisdiction over them – even though Defendants had threatened to bring claims of copyright infringement against Plaintiff on behalf of RM in this very Court and venue.

64. As is part of the public record in this case (DE 34), RM and Youngson then released Plaintiff from all claims including the subject claimed copyright claims Defendants falsely asserted against Plaintiff.

65. In view of the release of all of such claims, Plaintiff dismissed the action solely as against RM and Youngson, expressly preserving all claims against Defendants (DE 34).

66. The release of any copyright claims by RM and Youngson shows that Defendants' extortionate demands were made in bad faith and intended to extract money to which neither Defendants nor RM or Youngson were entitled.

67. After this action was instituted in June 2018, upon information and belief, Defendants, in concert with others, changed the website under which the Image was made available so that they could perpetrate their deceptive scheme more effectively.

68. Intending to continue to dupe additional unsuspecting consumers into using the Image and then threatening them to extract "settlements" of thousands of dollars (more than anyone would ever pay for the photos themselves), Defendants added conditions to the license that had not been on the website when Plaintiff found the Image.

69. Upon information and belief, Defendants made such changes in their continuing efforts to trap unsuspecting consumers into paying large sums of money after Defendants identified them in trolling the Internet for such users.

70. Defendants are guilty of deceptive acts and practices in violation of N.Y. Gen. Bus. L. § 349, for various reasons, including, but not limited to numerous wrongful and deceptive acts

in conspiracy with RM and Youngson as further set forth herein, including as alleged above and as follows:

   a. duping Plaintiff's marketing personnel and other consumers into using the Image by promoting the Image as "free," with no restriction on access and no requirement to agree to terms before use, with the intent that it be so used;

   b. trolling the Internet for users of the Image with intent to trap innocent and unsuspecting victims, whom Defendants could then intimidate into unjustifiably paying thousands of dollars;

   c. sending demand letters falsely claiming that Plaintiff did not have a license to use the Image and that Plaintiff infringed the Image copyright, while knowing fully that there is no infringement as a matter of law because the Image was "offered" under a license; and

   d. sending the aforementioned demand letters with the intent and purpose to threaten and intimidate Plaintiff into paying money that could not have been recovered based upon the claims asserted by Defendants, while knowing fully that there was no good faith basis to believe any such damages could in fact be recovered.

**CLAIM FOR RELIEF**
**(For Defendants' violation of N.Y. Gen. Bus. L. § 349)**

71. Plaintiff repeats and re-alleges each of the allegations of this complaint as though fully set forth herein.

72. Pursuant to N.Y. Gen. Bus. L. § 349: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

73. Section (h) of N.Y. Gen. Bus. L. § 349 allows for a private right of action, as follows:

(h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a prevailing plaintiff.

74. The acts of Defendants as detailed above constitute "deceptive acts or practices" under N.Y. Gen. Bus. L. § 349.

75. Defendants' wrongful conduct as described herein has been directed not only against Plaintiff but against many other consumers throughout the country, including in the State of New York.

76. Defendants' wrongful conduct as described herein affects consumers and the public more generally and is not simply a private, isolated matter between Plaintiff and Defendants.

77. Plaintiff has been contacted by many others who have reported similar incidences of Defendants' wrongful and deceptive conduct as described herein.

78. There are numerous reports on the Internet of Defendants' deceptive acts as described herein and similar thereto.

79. Examples of such reports can be found at:

https://pubcit.typepad.com/clpblog/2019/02/consumer-warning-copyright-trolling-by-higbee-and-associates.html (February 12, 2019 "Consumer Warning: Copyright Trolling by Higbee and Associates" by PublicCitizen)

https://www.techdirt.com/articles/20190220/13283641640/investigating-higbee-associates-copyright-trolling-operation.shtml (February 22, 2019 "Investigating the Higbee & Associates Copyright Trolling Operation")

80. As described herein, Defendants have acted in bad faith in conspiring with others to concoct and implement a deceptive scheme to dupe consumers into using photos so that Defendants can then threaten suit and seek unjustified and baseless damages, and as such, their deceptive acts are not "protected" by any "privilege."

81. Plaintiff has sustained actual damages as a result of Defendants' wrongful conduct as described herein.

82. Plaintiff has sustained damages in responding to Defendants' wrongful conduct as described herein and defending itself against the false claims asserted by Defendants.

83. Plaintiff has been damaged by Defendants' deceptive acts as described herein in that Plaintiff's marketing personnel were duped into using the Image based upon the deceptive manner in which the Image was offered for use, thereby causing Plaintiff valuable time and effort in defending itself against Defendants' false, misleading and deceptive demands.

84. Plaintiff is also entitled, as damages in this action, to its reasonable attorneys' fees under N.Y. Gen. Bus. L. § 349(h).

85. The amount in controversy herein exceeds the sum or value of $75,000.

86. By reason of the Defendants' deceptive acts and practices as described herein, including attempting to extort money from Plaintiff under false claims of copyright infringement and unjustified damages, the Defendants have violated N.Y. Gen. Bus. L. § 349 and thus, Plaintiff is entitled to damages from Defendants, jointly and severally, in an amount established at trial.

87. Plaintiff demands a trial by jury of all matters so triable.

WHEREFORE, Plaintiff Meyer, Suozzi, English & Klein, P.C., respectfully requests judgment as follows:

1) Awarding Plaintiff damages against Defendants, jointly and severally, including Plaintiff's full costs of this litigation, including reasonable attorneys' fees under N.Y. Gen. Bus. L. § 349(h); and

2) Awarding Plaintiff other statutory remedies under N.Y. Gen. Bus. L. § 349(h);

3) Awarding Plaintiff such other relief as this Court may deem just and proper.

Dated: Garden City, New York
June 12, 2019

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
Pro Se
By: */s/*
Kevin Schlosser
990 Stewart Avenue, Suite 300
Garden City, New York 11530-9194
Tel.: (516) 741-6565
kschlosser@msek.com